TEWS LIME & CEMENT COMPANY and another, Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.

*April 8—May 7, 1968.*

666

For the appellants there was a brief by *Gibbs, Roper & Fifield* of Milwaukee, and oral argument by *Richard S. Gibbs.*

For the respondents Department of Industry, Labor & Human Relations and the state of Wisconsin the

cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, J.   From the briefs and arguments of counsel four issues are presented:

1. Was the heart attack suffered by the deceased, Eugene Louis Miller, an accidental injury compensable under the Workmen's Compensation Act, ch. 102, Stats., 1963?

2. Was Miller's act of returning to work a refusal to follow medical treatment within the meaning of sec. 102.42 (7), Stats.?

3. Should the award be set aside as being the result of a constructive fraud upon the employer?

4. Was the commission required to make a finding concerning Miller's alleged refusal to follow medical advice?

The first issue is whether the fatal heart attack suffered by Eugene Miller was an accidental injury subject to workmen's compensation benefits.

The commission's finding that Miller's death was caused by the work effort of June 9, 1964, is wholly supported by the medical testimony. Dr. Flood testified he was of the opinion the work Miller was doing aggravated the preexisting condition and precipitated the heart attack. Dr. L. W. Sennett, a specialist in internal medicine and cardiology, who examined Miller's medical records, concluded there was a causal relationship between the deceased's heart attack and the work exertion. A report of Dr. Nathan Grossman, which was made a part of the record, also concluded there was a causal relationship between the work effort and Miller's death.

From the medical evidence offered at the hearing, it is clear that the physical exertion by the deceased in his employment was an immediate cause of the heart attack. The question is whether it is compensable as an "accident or disease causing injury [which] arises out

of his employment" within the meaning of the Workmen's Compensation Act.[2] The appellants do not directly raise this issue but question the point by taking and emphasizing the position that Miller "did not sustain any traumatic or accidental injury" and that "there is no showing that he suffered from any sudden rupturing or breaking as the result of any strain."

Myocardial degeneration and arteriosclerosis, of course, are not occupation diseases and are not compensable as such since there is no relation between the employment and the disorder. *Schmitt v. Industrial Comm.* (1937), 224 Wis. 531, 272 N. W. 486. But when heart failure is caused by employment or employment-related exertion, it is compensable as an industrial accident regardless of whether or not there was preexisting myocardial degeneration or arteriosclerosis. Such is within this court's recent·opinion in *Lewellyn v. ILHR Department,* ante, p. 43, 155 N. W. 2d 678, where, in speaking of preexisting conditions, the court said:

"If the work activity precipitates, aggravates and accelerates beyond normal progression, a progressively deteriorating or degenerative condition, it is an accident causing injury or disease and the employee should recover even if there is no definite 'breakage.' *Shawley v. Industrial Comm.,* [(1962), 16 Wis. 2d 535, 114 N. W. 2d 872], Currie, 37 Wis. Bar Bulletin 7."

The appellants' principal contention is that Miller unreasonably refused to follow medical treatment by returning to work and, consequently, benefits must be denied in accordance with sec. 102.42 (7), Stats. That section provides, in part:

---

[2] Sec. 102.03, Stats., provides, in part: **"Conditions of liability.** (1) Liability under this chapter shall exist against an employer only where the following conditions concur:

"(a) Where the employe sustains an injury.

". . .

"(e) Where the accident or disease causing injury arises out of his employment."

"TREATMENT REJECTED BY EMPLOYEE. Unless the employe shall have elected Christian Science treatment . . . no compensation shall be payable for the death or disability of an employe, if his death be caused, or insofar as his disability may be aggravated, caused or continued (a) by an unreasonable refusal or neglect to submit to or follow any competent and reasonable medical or surgical treatment, . . ."

The appellants argue that Miller unreasonably refused to follow medical treatment by returning to work after Dr. Flood advised him he would be "gambling" if he did so, and the doctor's further advice to get inside, lighter work. The trial court concluded the section was inapplicable. It was the court's opinion that the section concerns treatment following primary injury and not the failure to follow medical treatment given in relation to a nonemployment-related condition. We agree that this is the intent of sub. (7) when read in context of the entire section. The title of the section is "Incidental Compensation." Sub. (1) is particularly helpful in understanding the intent of the section:

"The employer shall supply such medical, surgical and hospital treatment, medicines, medical and surgical supplies, crutches, . . . as may be reasonably required to cure and relieve from the effects of the injury, . . . and in case of his neglect or refusal seasonably to do so, or in emergency until it is practicable for the employe to give notice of injury, the employer shall be liable for the reasonable expense incurred by or on behalf of the employe in providing the same. . . ."

It is in the context of treatment after the accident that the legislature obliged the employee to accept reasonable medical treatment by sec. 102.42 (7), Stats. It does not impose a duty on the employee to follow medical treatment for a nonemployment-related condition simply because there is a possibility that the condition may be aggravated or accelerated by or subject him to a breakdown during employment activity.

The appellants also contend that Miller's conduct in returning to work without informing his employer of his physical condition and the advice given to him by his doctor amounted to a constructive fraud.

In support of this contention the appellants argue that Miller knew he had a serious heart condition. While it is undoubtedly true that Miller had advanced and severe arteriosclerosis and heavy work or physical exertion would create a real danger of a serious heart attack, there is no evidence in the record that Miller knew or was ever told of his condition and the danger implicit to this condition. Miller's constant and dominant complaint was the pain in his legs. In April, 1964, he sought relief from the pain in his legs. The bilateral sympathectomy was performed to relieve the pain in his legs. The record does not reveal he was told he was "gambling" with a serious heart attack if he returned to work. Nor does the record show that he had been advised at any time that he had a dangerous heart condition. When he saw the doctor again a few days after returning to work his complaint again was pain in his legs. From this evidence it cannot be said that Miller, a man with an eighth grade education and who spent his whole adult life as a truck driver, knew that he had a serious heart condition and that heavy work might prove fatal or that he intentionally withheld information of a crucial nature from his employer.

If we were to assume that Miller was careless or negligent in returning to work, recovery should still not be denied.

One fundamental basis of the workmen's compensation provisions is that the negligence of an employee will not bar compensation. (*See* Conditions of Liability, sec. 102.03, Stats.)

"Poor judgment or negligence does not preclude an employee from benefits of the Workmen's Compensation Act. This court has heretofore held that negligence does

not prevent compensation. *Northwestern Iron Co. v. Industrial Comm.* (1915), 160 Wis. 633, 637, 152 N. W. 416; *Karlslyst v. Industrial Comm.* (1943), 243 Wis. 612, 614, 11 N. W. (2d) 179." *American Motors Corp. v. Industrial Comm.* (1957), 1 Wis. 2d 261, 271, 83 N. W. 2d 714.

"Compensation is not barred because the employee was negligent, or grossly negligent, inexperienced, or guilty of an error in judgment or of a heedless or inadvertent or careless or thoughtless, act." 99 C. J. S., *Workmen's Compensation,* p. 911, sec. 264.

The situation is not similar to that presented in *Volunteers of America v. Industrial Comm.* (1966), 30 Wis. 2d 607, 141 N. W. 2d 890, as contended by the appellants. In that case an epileptic knowingly misrepresented to his employer that he was not subject to epileptic seizures. The case was controlled by sec. 102.08, Stats., which specifically allows epileptics and blind persons to elect to forego workmen's compensation coverage for injuries resulting because of the disease. The court said the legislative policy of sec. 102.08 is:

". . . to aid epileptics in obtaining employment by permitting them to elect not to be subject to the Workmen's Compensation Act with respect to injuries resulting because of the epilepsy. Implicit in this statute is the requirement that the employee will not fraudulently conceal his epileptic condition from his employer."

There is no general requirement that an employee must volunteer information concerning all his ailments to his employer. As Mr. Justice FAIRCHILD observes in his dissent in the *Volunteers of America Case:*

"The legislature has not provided generally for denial of compensation to an injured employee whose injuries arise out of a disability or handicap which he has misrepresented or concealed, . . ."

The question of whether the commission was required to make a specific finding concerning Miller's alleged refusal to follow medical advice not to return to work

has been raised. With regard to the appellants' contention on the applicability of sec. 102.42 (7), Stats., the commission was not required to make a finding because that section presents no defense in the instant case.[3]

"It follows that the facts pleaded before the *Industrial Commission* by the . . . [appellants] here as a defense to the application for compensation constituted no defense thereto. Such facts constituting no defense, the *Industrial Commission* was not required to make findings with reference thereto, and its failure so to do, . . . is wholly immaterial." *Miller Scrap Iron Co. v. Boncher* (1921), 173 Wis. 257, 263, 180 N. W. 826.

The contention that Miller committed a constructive fraud in concealing his heart condition was not specifically raised before the commission. The appellants' memorandum to the commission regarding the examiner's findings nowhere raises the contention that Miller was engaged in a fraud. Since the record is wholly without any direct evidence of fraud, it is not reasonable to expect the commission to make a specific finding that no fraud existed when an allegation of such was not presented by the appellants.

*By the Court.*—Judgment affirmed.

---

[3] While we have determined that the lack of a finding of fact by the commission was not in the nature of a prejudicial error, we deem the better practice by the commission is to either make a finding upon the evidence presented in support of the litigant's theory or state why no finding was made. *See Lewellyn v. ILHR Department, supra,* page 49.