KURSCHNER, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.

*No. 126. Argued September 3, 1968.—Decided October 1, 1968.*
(Also reported in 161 N. W. 2d 213.)

For the appellant there was a brief by *Doar, Drill & Norman* of New Richmond, and oral argument by *James G. Drill.*

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *Donald P. Johns,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondents Jerome Foods, Inc., and Liberty Mutual Insurance Company there was a brief by *King, Carroll & Parroni,* attorneys, and *Manlio G. Parroni* of

counsel, all of Eau Claire, and oral argument by *Manlio G. Parroni*.

WILKIE, J. The first issue presented on this appeal is whether the industrial commission's finding of 15 percent permanent partial disability is based solely on impairment of bodily function without regard to impairment of earning capacity. We conclude that it is.

It is the finding of the industrial commission and not that of the examiner which we review.[1] However, in the instant case the commission affirmed the specific finding of the examiner and a review of the hearing strongly indicates that the examiner was preoccupied with functional disability without regard for loss of earning capacity. Because this question must be resolved primarily from an analysis of the manner in which the examiner conducted the hearing, portions of the hearing are set forth below:

Following Dr. Whaley's testimony concerning appellant's medical history the following exchange took place:

"[*Mr. Drill*] Q. Based upon that same history, Doctor, and examinations and treatment, and assuming that Mr. Kurschner has had an eighth grade education and no training or experience in—

"*The Examiner* (Interposing) : Now you are getting into a social problem. You can present a hypothetical question based upon his medical knowledge and from a *functional point of view* ask him what the extent of disability is. [Emphasis added.]

"*Mr. Drill: Strictly functional*, Mr. Examiner? [Emphasis added.]

"*The Examiner:* Well, sir, when you are claiming permanent total disability *that is exactly what the law means,* permanently totally disabled. [Emphasis added.]"

Mr. Drill continued the direct examination of Dr. Whaley:

---

[1] *Anheuser Busch, Inc. v. Industrial Comm.* (1966), 29 Wis. 2d 685, 692, 139 N. W. 2d 652.

"*Q.* Doctor, based upon that same history and your examinations and treatment, do you have an opinion to the same degree of certainty as to whether Mr. Kurschner is presently disabled from an employment standpoint, and, if so, to what extent? *A.* It is my opinion that he is disabled. In my opinion he is disabled to an extent that he cannot do common physical labor.

"*Q.* When you say 'he cannot do common physical labor,' Doctor, how inclusive or exclusive are you being?

"*The Examiner* (Interposing): Now, let's have an opinion from the Doctor as to the percentage of that disability as compared to the body as a whole.

". . .

"*Q.* Doctor, have you an opinion based to a reasonable medical probability, from the history that you obtained, from your examinations of this patient, as to whether or not your patient suffered any permanent disability as a result of the accident of July 25, 1964? *A.* Yes, I do.

"*Q.* Now, Doctor, have you an opinion based to a reasonable medical probability as to the percentage of that permanent disability as compared to the body as a whole, 100% being the body as a whole? *A.* What do you mean by 100%?

"*Q.* By 100% we mean a total disability; an inability to normally function. *A.* I don't understand that.

"*Mr. Drill:* Mr. Examiner, I am not sure that I understand that. Do we mean he is 100% disabled from moving about?

"*The Examiner:* When we say a man is 100% disabled, he is 100% disabled from doing practically anything that he can perform. It is not 100% related to his occupation; it is related to his function as a human being. One hundred per cent is his ability to function as a human being. You see, a man may be a concert violinist and he may lose the distal phalanx on his left index finger. He would be 100% disabled permanently as a violinist but that would not make him 100% disabled for Workmen's Compensation purposes.

"*Mr. Drill:* Certainly. I understand that, Mr. Examiner.

"*The Examiner:* Now, I'm trying to get the Doctor to state his opinion as to the extent of this man's disability, whether it is 100% permanent or whether it is some percentage below 100%.

"*The Witness:* Well, sir, I don't believe I can answer it based on the outline you have given as to definition. I don't think it's possible for me to give you a meaningful answer."

Dr. Whaley was later recalled to the stand at which time he testified that Kurschner was 50 percent disabled as to bodily function and 100 percent disabled as to his ability to work.

At the conclusion of the hearing the examiner found that "the applicant sustained permanent partial disability equivalent to *15 percent of the body as a whole* . . . ." (Emphasis added.)

From these excerpts from the record and the specific findings of the examiner, we conclude that the examiner defined disability in terms of functional loss only. Respondents Jerome Foods, Inc., and Liberty Mutual Insurance Company argue that the examiner was merely indicating to the doctor the limits of his competency as an expert witness. This may be true but in so doing the examiner defined "disability" solely in terms of functional disability.

Thus the second question presented on this appeal is, assuming the industrial commission did base its finding of 15 percent permanent partial disability solely on impairment of bodily function, did it exceed its powers by so doing. Here again, we think so.

Sec. 102.44, Stats., sets forth the basis for determining the percentage of permanent partial disability. It provides:

"Section 102.43 shall be subject to the following limitations:

"(2) *In case of permanent total disability* aggregate indemnity shall be weekly indemnity for the period that he may live. *Total impairment for industrial use* of both eyes, or the loss of both arms at or near the shoulder, or of both legs at or near the hip, or of one arm at the shoulder and one leg at the hip, shall constitute perma-

nent total disability. This enumeration shall not be exclusive but in other cases the commission shall find the facts.

"(3) *For permanent partial disability* not covered by the provisions of sections 102.52 to 102.56 the aggregate number of weeks of indemnity shall bear such relation to the number of weeks set out in paragraphs (a) and (b) as the *nature of the injury bears to one causing permanent total disability* and shall be payable at the rate of 70 percent of the average weekly earnings of the employe to be computed as provided in section 102.11. Such weekly indemnity shall be in addition to compensation for healing period and shall be for the period that he may live, not to exceed, however, these named limitations, to wit:

"(a) One thousand weeks for all persons 50 years of age or less.

"(b) For each successive yearly age group, beginning with 51 years, the maximum limitation shall be reduced by 2½ percent per year, with no reduction in excess of 50 percent.

"(4) Where the permanent disability is covered by the provisions of sections 102.52, 102.53 and 102.55, such sections shall govern; provided, that in no case shall the percentage of permanent total disability be taken as more than 100 percent." (Emphasis added.)

In *Northern States Power Co. v. Industrial Comm.*[2] this court reviewed a finding of the industrial commission that an employee who had not suffered wage loss or impairment of earning capacity was permanently partially disabled to the extent of 12½ percent. The employer and the insurance carrier contended that, because the employee's earnings were as high, or higher, after the ending of the healing period as they were at the time of the accident, he had sustained no permanent partial disability within the meaning of sec. 102.44 (3), Stats.[3]

---

[2] (1947), 252 Wis. 70, 30 N. W. 2d 217.

[3] *See Wagner v. Industrial Comm.* (1956), 273 Wis. 553, 567b, 79 N. W. 2d 264, 80 N. W. 2d 456, for analysis of *Northern States Power.*

The court determined that due to the amendments to the Workmen's Compensation Act of 1923 the "legislature made nonschedule and nonrelative injuries compensable specifically on the basis of a comparison between the nature of the *injury* and the nature of *an injury* causing permanent total disability." [4]

The court expressly recognized that earning capacity was a crucial aspect of this comparison.[5]

". . . since an award for permanent disability is to be made for all time at the end of this period it must be based upon some sort of prediction as to impairment of earning capacity. It appears to us that the legislature has specifically chosen in the case of nonschedule permanent partial disabilities the method of comparing the severity of the injuries causing such a disability with those causing permanent total disability." [6]

Thus it appears that the injuries of an applicant (nonschedule but permanent total or partial) are to be compared medically with injuries that would render a person permanently totally disabled for industrial purposes as provided in sec. 102.44 (2), Stats., and *not* to injuries that would totally disable a person functionally without regard to loss of earning capacity.

Dr. Sorensen, testifying for the defense, estimated Kurschner's disability as 15 percent of total "due to pain in the small of back, limited motion, lack of endurance and chronic swelling of the lower extremities." Dr. Chatterton, also testifying for the defense, estimated Kurschner had a 15 percent permanent disability. Neither made an evaluation in terms of comparing a man with Kurschner's injuries with one so injured who is rendered permanently

---

[4] *Northern States Power Co. v. Industrial Comm.*, *supra*, footnote 2, at page 76.

[5] *See* 2 Larson, *Law of Workmen's Compensation*, p. 2, sec. 57.10.

[6] *Northern States Power Co. v. Industrial Comm.*, *supra*, footnote 2, at page 76.

totally disabled for industrial purposes as provided in sec. 102.44 (2), Stats.

Thus, in concluding that the industrial commission, by adopting the finding of the examiner, determined appellant's 15 percent permanent partial disability by comparing appellant's injuries to those of a hypothetical person totally disabled functionally, and not to one totally disabled as to loss of earning capacity, this court holds that such a finding was contrary to law.

A third question is presented on this appeal, namely, assuming the finding of the industrial commission of 15 percent permanent partial disability is based on a consideration by the commission of both factors (loss of bodily function and loss of earning capacity), is there credible evidence to support such a finding. We think not.

Dr. Whaley presented the only medical estimate of appellant's disability with regard to earning capacity. He testified that appellant was permanently totally disabled from doing useful work. As we have previously observed, in the testimony of Doctors Sorensen and Chatterton with regard to permanent partial disability there is no indication that they made a medical comparison of appellant's injuries with injuries of a similar nature causing permanent partial disability. The testimony as a whole indicates that the estimates of both doctors were based solely on functional loss. Both doctors did offer some testimony that related to appellant's earning capacity. They testified that he should not return to his old job (thus indicating 100 percent disability with regard to the old job) but that he could do some light and easy work. However, this is not the type of evidence which sec. 102.44 (3), Stats., requires. It is not enough under that statute that medical experts make general statements about the ability of appellant to earn a living. Testimony must be offered that will permit a comparison between appellant's

injury and an injury that would cause permanent total disability for industrial use. Such evidence was not presented to the examiner nor is there other evidence from which such a comparison can be inferred.

The case should be remanded to the industrial commission for a determination on the proper basis, of the extent of any permanent disability. An opportunity should be provided for the introduction of such new evidence as each party may deem appropriate.

*By the Court.*—Judgment reversed with instructions to remand to the industrial commission (now Department of ILHR) for the conduct of further proceedings consistent with this opinion.