Claim of Genevieve Ambroson No. 203746.

**Genevieve AMBROSON,**
Claimant and Appellee,

v.

**NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU,**
Appellant.

Civ. No. 8893.

Supreme Court of North Dakota.

Aug. 10, 1973.

Allen I. Olson, Atty. Gen., David L. Evans and Leonell W. Fraase, Sp. Asst. Attys. Gen., North Dakota Workmen's Compensation Bureau, Bismarck, for appellant.

Robert A. Alphson, Grand Forks, for claimant and appellee.

ERICKSTAD, Chief Justice.

On August 22, 1970, while employed by the Western Potato Company in Grand Forks, North Dakota, the claimant Mrs. Genevieve Ambroson slipped and fell to the floor, breaking her right leg in two places. The Bureau notified her that it was its intent to make a permanent partial award to her, as recommended and evaluated by its medical director, as follows:

> "* * * 5% permanent partial disability due to partial loss of use of leg, right, at knee due to partial loss of use of ankle function _____9.75 wks.

> "* * * @ $31.50 per week ____$307.13 which shall be paid at the rate of $126.00 every four weeks."

An appeal was taken by the claimant to the district court of Grand Forks County. That court found: (1) that the award was based only on the medical report of J. H. Beaumier, M.D., notwithstanding that A. E. Culmer, Jr., M.D. (a consulting physician), was of the opinion that the claimant had a 5% partial permanent disability of the leg due to the fracture of the knee and a 10% partial permanent disability of the foot due to involvement of the ankle, secondary to the fracture of the tibia; and (2) that the Bureau had not considered or obtained testimony relating to the nature

of the claimant's employment, earning capacity, age or training. It concluded that the Workmen's Compensation Bureau erred in basing its award solely on the medical report of Dr. Beaumier and in not taking or considering testimony relative to the nature of the claimant's employment, earning capacity, age and training. It held that the award was not supported by the evidence and accordingly remanded the case to the Bureau for further hearing. A judgment based upon those findings and conclusions was entered on the 27th of September 1972, and it is from that judgment that the Workmen's Compensation Bureau appeals.

The Bureau has filed three specifications of error, but as we believe that all issues involved in this case may be discussed under specification of error No. 1, we shall set forth only that specification and shall consider all issues under it.

Specification of error No. 1 reads:

" * * * the court erred in finding as a matter of law that the North Dakota Workmen's Compensation Bureau was in error in basing its Award of Permanent Partial Disability solely on the medical report of Dr. J. H. Beaumier and in not taking and considering testimony relative to the nature of claimant's employment, earning capacity, age and training."

The first issue presented by a consideration of this specification appears to be whether the claimant had a right under Section 65–05–28, N.D.C.C., to have the Bureau appoint a third physician to make an examination and report to it and thereafter render its award.

Dr. Beaumier was the claimant's attending physician, whereas Dr. Culmer was her consulting physician.

It is the claimant's contention that attending physicians almost always find less disability than consulting physicians and that applying Section 65–05–28, N.D.C.C., the claimant was entitled to have the Bu-

reau consider the view of another physician, since the attending physician and consulting physician disagreed as to the extent of disability.

The pertinent part of Section 65–05–28 reads:

"Examination of injured employee—Paid expenses—Refusal.—After suffering an injury, an employee, as frequently and at such times and places as reasonably may be required, shall submit himself to examination by a duly qualified physician designated or approved by the bureau. *The employee may have a duly qualified physician designated and paid by him present to participate in such examination. In case of any disagreement between physicians making an examination on the part of the bureau and the employee's physician, the bureau shall appoint an impartial physician duly qualified who shall make an examination and shall report thereon to the bureau.* * * *" [Emphasis added.] N.D.C.C.

Inasmuch as both physicians in the instant case were designated by the claimant and paid by the Bureau, we do not think that Section 65–05–28, N.D.C.C., applies.

It is our view that Section 65–05–28, N.D.C.C., applies only when there is a disagreement between a physician selected and paid by the Bureau and a physician selected and paid by the claimant.

As our review, and accordingly the trial court's review, is limited to determining whether there is substantial evidence to support the Bureau's findings of fact, and as there is substantial evidence upon which the Bureau could find the lesser amount of disability, that finding is sustained. Haggard v. North Dakota Workmen's Compensation Bureau, N.D., 171 N. W.2d 104, Syllabus ¶ 2 (1969).

The next issue is whether the Bureau was correct in considering the injury as a scheduled injury under Section 65–05–13, Subsection 19, N.D.C.C., and limiting the

amount of the award to the amount permitted by that section.

The pertinent parts of Section 65–05–13, in effect at the time of the injury complained of, read:

"Scheduled injuries—Permanent loss of member—Weekly compensation—Time compensation payable.—If the injury causes the loss of a member, the fund shall pay to the disabled employee a weekly compensation equal to thirty-one dollars and fifty cents per week for the following periods:

\*     \*     \*     \*     \*     \*

"19. For loss of leg at or above knee ---------195 weeks;

\*     \*     \*     \*     \*     \*

" \*   \*   \* The permanent loss of use of a thumb, finger, toe, arm, hand, foot, leg, or eye shall be considered as the equivalent of the loss of such thumb, finger, toe, arm, hand foot, leg or eye, and compensation for partial loss of use of said parts shall be allowed on a percentage basis. \*   \*   \*

"Recovery under this section shall bar an additional award of permanent partial disability for the same injury, as elsewhere provided in this chapter." N.D. C.C.

The claimant contends that instead of basing the award on Section 65–05–13, N. D.C.C., the Bureau should have based its award on Section 65–05–12, N.D.C.C., and that in arriving at the extent of permanent partial disability the Bureau should have considered testimony relative to the nature of the claimant's employment, earning capacity, age and training, in accordance with the trial court's direction on remand.

Acknowledging that this has not been the practice on the part of the Bureau in the past, but asserting that this would be the reasonable and fair method of determining a person's loss of earnings and that it therefore would be a proper method of compensating a person for injuries suf-

fered in the course and scope of covered employment, the claimant refers us to the case of Kurschner v. Industrial Comm., 40 Wis.2d 10, 161 N.W.2d 213 (1968).

In *Kurschner,* the Wisconsin supreme court quoted from one of its earlier decisions, namely Northern States Power Company v. Industrial Comm., 252 Wis. 70, 30 N.W.2d 217 (1947), as follows:

" ' \*   \*   \* since an award for permanent disability is to be made for all time at the end of this period it must be based upon some sort of prediction as to impairment of earning capacity. It appears to us that the legislature has specifically chosen in the case of nonschedule permanent partial disabilities the method of comparing the severity of the injuries causing such a disability with those causing permanent total disability.' " Kurschner v. Industrial Comm., *supra,* 161 N.W.2d 213 at 217.

From this quotation it is obvious that Wisconsin considers impairment of earning capacity in nonscheduled permanent disability cases.

In the instant case, the Bureau asserts that the claimant's injuries are scheduled injuries covered by Section 65–05–13, N. D.C.C., but not covered by Section 65–05–12, N.D.C.C.

The pertinent language of Section 65–05–12 reads:

"Permanent partial disability—Weekly compensation—Time paid.—If the injury causes permanent partial disability, *other than scheduled injuries,* as elsewhere provided for in this chapter, the percentage which such disability bears to total disability shall be determined, \*   \*   \* " [Emphasis added.] N.D.C.C.

The Bureau points out that the words "other than scheduled injuries" were added to that section by Chapter 562 of the Session Laws of 1969.

The claimant contends, however, that her injuries are not scheduled injuries under

Section 65–05–13, N.D.C.C., because they do not constitute a loss of a member.

The Bureau in response asserts that permanent loss of the use of a member described in Section 65–05–13 shall be considered as the equivalent of a loss of a member, as indicated by the latter part of Section 65–05–13, which reads:

"The permanent loss of use of a thumb, finger, toe, arm, hand, foot, leg, or eye shall be considered as the equivalent of the loss of such thumb, finger, toe, arm, hand, foot, leg, or eye, and compensation for partial loss of use of said parts shall be allowed on a percentage basis." N. D.C.C.

The Bureau points out that the Legislature has taken overt action to eliminate from consideration age and occupation factors in determining disability.

Subsection E of Section 3 of Chapter 162 of the 1919 Session Laws is the forerunner of Section 65–05–12, N.D.C.C. The pertinent part of that subsection reads:

"If the injury cause permanent partial disability, the percentage which such disability bears to total disability, *taking into consideration the employee's age and occupation,* shall be determined * * *" [Emphasis added.]

In the 1949 Session of our Legislature, Section 65–05–12, N.D.R.C.1943, was amended by Section 7 of Chapter 354 of the Session Laws of 1949 to delete the words "taking into consideration the employee's age and occupation".

■ Without attempting to evaluate the wisdom of the action, it is our view that the legislative history discloses an intent to limit claimants with injuries such as the claimant suffered to recovery under Section 65–05–13, N.D.C.C., and that in determining an award thereunder such factors as the nature of the claimant's employment, earning capacity, age or training, are not to be considered, loss of use being by that section equivalent to loss of a member,

and the injuries in this case being equivalent to the loss of use.

In making this determination, we hope we are not discouraging the Legislature from considering in the future the possibility that claimants might receive unequal treatment depending upon whether their claims fall under Section 65–05–13 or 65–05–12, N.D.C.C.

For reasons stated herein, the judgment of the trial court is reversed.

KNUDSON, PAULSON, TEIGEN and VOGEL, JJ.