THEODORE FLEISNER, INC., and another, Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and another, Respondents.

*No. 261. Argued October 2, 1974.—Decided October 29, 1974.*
(Also reported in 222 N. W. 2d 600.)

318

For the appellants there were briefs by *Kasdorf, Henderson, Dall, Lewis & Swietlik,* attorneys, and *Nonald J. Lewis* and *William M. Cannon* of counsel, all of Milwaukee, and oral argument by *Mr. Cannon.*

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *Stephen M. Sobota,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general, and for the respondent Theodore Fleisner there was a brief by *Joseph J. Welcenbach* and *Charlton, Yanisch & Greco,* all of Milwaukee, and oral argument by *Earl A. Charlton.*

WILKIE, C. J. This appeal involves a judgment confirming a Department of Industry, Labor & Human Relations order awarding defendant-respondent Theodore Fleisner workmen's compensation for damages resulting from a heart attack he suffered while digging in a ditch. Two issues are presented: (1) Does credible evidence support the department's finding that the heart attack arose from Fleisner's employment? It does. (2) Did the department commit prejudicial error in failing to require the parties to exchange medical reports prior to the hearing and in failing to delay the hearing to allow plaintiffs-appellants to present the direct testimony of two doctors? The answer is "No."

The incident occurred on December 2, 1971, in West Bend. At the time Fleisner was fifty-two years old and

weighed 235 pounds, substantially more than his normal weight of 195. Theodore Fleisner, Inc., had been engaged to put in a sewer and water lateral connection from a house to the street. Fleisner worked for the corporation. He arrived at the jobsite at 8:30 a. m., departed in his truck and went to Cedarburg and Port Washington, and returned at about 11 a. m. He then descended into an 8½-9 foot ditch to help three employees find a sewer connection. All three employees testified that he then appeared in good physical condition, and that he did not complain about his health.

He shoveled for five to ten minutes with a spade, throwing the dirt three to four feet, and then began to experience severe chest pains. Fleisner and the other three employees all testified that after Fleisner established Theodore Fleisner, Inc., in 1964, it was unusual for him to do heavy manual labor, like digging ditches. Fleisner crawled out of the ditch and his son drove him to the office of Dr. Grundahl in West Bend. Dr. Grundahl took Fleisner's blood pressure, gave him a shot, and recommended that he be hospitalized. He was taken to St. Joseph's Community Hospital in West Bend, where he remained until December 23, 1971, under the care of Dr. Grundahl and Dr. Muth. Fleisner's condition was diagnosed as an acute anterior myocardial infarction. He was totally disabled until April 30, 1972.

Two doctors testified at the ILHR hearing: Dr. Gordon, an internist who began treating the defendant on February 7, 1972, and Dr. Schweiger, a heart specialist paid by the plaintiff insurance company, who examined Fleisner on March 24, 1972, pursuant to sec. 102.13, Stats. Neither party requested Drs. Grundahl or Muth to appear at the hearing, and consequently neither testified.

Dr. Gordon examined Fleisner in February, 1972, took his medical history, reviewed his hospital records, and obtained an electrocardiogram. Dr. Gordon concluded

that Fleisner had suffered an acute myocardial infarction at the time he was in the trench, and that the attack was directly related to the extreme exertion connected with the shoveling. Dr. Schweiger agreed that Fleisner had suffered a myocardial infarction, but testified it was only coincidental that the attack occurred while Fleisner was shoveling. Based on his conversations with Fleisner, the doctor concluded that Fleisner was accustomed to digging, and that the exertion connected with the shoveling on December 2d was nothing unusual. On cross-examination, however, Dr. Schweiger conceded that if Fleisner's exertion had been very unusual for him there might be some causal relationship between the shoveling and the attack.

On July 19, 1972, the hearing examiner found that the heart attack was an injury arising out of Fleisner's employment, and therefore awarded him workmen's compensation. The examiner's findings and award were affirmed by order of the commissioners of the department, and the department's order was in turn confirmed in a judgment of the trial court.

An award of workmen's compensation by the Department of Industry, Labor & Human Relations will be affirmed by this court if it is supported by "any credible evidence." [1] In *Tews Lime & Cement Co. v. ILHR Department*,[2] this court held that the department was entitled to find that a heart attack arose out of the applicant's employment, and therefore to award compensation, where it found the attack was "caused by employment or employment-related exertion."

The department's conclusion that defendant's heart attack arose from his employment is amply supported by credible evidence. Dr. Gordon testified that the myocardial infarction started when defendant was in the

[1] *R. T. Madden, Inc. v. ILHR Department* (1969), 43 Wis. 2d 528, 547, 169 N. W. 2d 73.

[2] (1968), 38 Wis. 2d 665, 671, 158 N. W. 2d 377.

ditch, and that it was related to the extreme and unusual exertion connected with the shoveling. It is not disputed that the shoveling, though unusual, was part of defendant's employment activities. The doctor's testimony is thus sufficient evidence to support a conclusion that the heart attack was caused by employment-related exertion.

Plaintiffs-appellants argue that Dr. Gordon's testimony is "inherently erroneous" because it is controverted by Dr. Schweiger's testimony and by letters written by Drs. Grundahl and Muth. This court said in *Burks v. ILHR Department:* [3]

"... where there are inconsistencies or conflicts in medical testimony, it is the function of the department, and not of the courts, to reconcile those inconsistencies."

It is therefore unnecessary to examine any inconsistencies except to demonstrate that Dr. Gordon's testimony should not be disregarded as being incredible as a matter of law.

Dr. Gordon found the attack related to the shoveling. Dr. Schweiger found no such relationship, but admitted that his opinion might be different if the activity had been very unusual. Three employees who worked closely with defendant, however, testified that it was very unusual for him to do such heavy manual labor. The department's reliance on Dr. Gordon rather than on Dr. Schweiger is entirely reasonable.

Plaintiffs-appellants also rely on letters written by Dr. Muth and Dr. Grundahl, addressed to Fleisner's attorney. Plaintiff's attorney discovered these letters in the file Dr. Gordon had brought to the hearing, and introduced them as exhibits while cross-examining Dr. Gordon. Dr. Muth, who wrote on January 19, 1972, said that he had cared for Fleisner from December 2 through December 6, 1971, and stated his analysis as to the cause of Fleisner's myocardial infarction:

---

[3] (1969), 45 Wis. 2d 1, 6, 172 N. W. 2d 27.

"It is my feeling that the infarction could have occurred at any time and that work itself has little effect on the basic pathology. This is not to say that severe exertion did not play a part in precipitating the acute episode. It is impossible in a case like this to establish a clear cut cause and effect related to work.

"I am sorry I cannot be more definite in this letter."

Dr. Grundahl's letter, dated February 9, 1972, stated:

"In your letter of January 12th, you asked if the incident of shoveling dirt in an eight foot trench contributed to the heart attack of Theodore Fleisner. It is my opinion, that it is almost impossible to pinpoint it as a major contributing factor as a cause of a myocardial infarction. His history indicates that he suffered his initial pains while driving from Cedarburg in his pick-up truck, and it is altogether possible, that if he had gone home, he would have continued and developed a similar myocardial infarct. It is my opinion, therefore, that his shoveling was not the major contributing cause for his myocardial infarct, but could have aggravated the already pre-existing condition."

Dr. Muth's statement that the infarction could have occurred at any time and that work itself has little effect on the basic pathology, although the severe exertion could have played a part in precipitating the acute episode, is not necessarily inconsistent with a finding that the heart attack arose out of defendant's employment. As this court said in *Tews Lime & Cement Co. v. ILHR Department*,[4] even if the employee had pre-existing myocardial degeneration or arteriosclerosis, compensation may still be awarded if:

" '. . . the work activity precipitates, aggravates and accelerates beyond normal progression, a progressively deteriorating or degenerative condition . . . .' "

[4] (1968), 38 Wis. 2d 665, 671, 158 N. W. 2d 377, quoting *Lewellyn v. ILHR Department* (1968), 38 Wis. 2d 43, 59, 155 N. W. 2d 678.

Dr. Muth's additional statement that "It is impossible in a case like this to establish a clear cut cause and effect related to work" is a mere conclusion of law.

In his letter, Dr. Grundahl stated that Fleisner's "history indicates that he suffered his initial pains while driving from Cedarburg in his pick-up truck." However, this statement is directly contrary to Fleisner's own testimony as well as inconsistent with the testimony of the three employees who testified that before shoveling Fleisner appeared physically well and made no complaints about his health. Moreover, Dr. Grundahl's letter also states that the shoveling "could have aggravated the already pre-existing condition."

Thus, we conclude that nothing in the record renders Dr. Gordon's testimony "inherently erroneous" as suggested by plaintiffs-appellants. His testimony was sufficient to support the compensation award, and the department was entitled to rely on it.

In letters of March 2 and April 12, 1972, plaintiffs-appellants requested the department to invoke its rule, IND 80.21,[5] under which the parties can be required to furnish copies of physicians' reports "in their possession or procurable by them" to the department, which in turn can release the reports to the opposing parties. Both requests were refused.

In response to the March 2d request, a department hearing examiner wrote on March 9th:

". . . Before invoking this Rule, it is requested that the parties voluntarily exchange all medical reports in their possession, or procurable by them.

---

[5] Sec. IND 80.21, 4 Wis. Adm. Code, provides: "Physician's reports. Upon the request of the industrial commission, any party in interest to a claim under the workmen's compensation act shall furnish the industrial commission with copies of all physicians' reports in their possession or procurable by them. When deemed advisable by the industrial commission, copies of such reports may be furnished to the other parties in interest."

"Counsel for the parties are requested to advise this office on or before April 6 whether medical reports have been exchanged."

In their April 12th letter plaintiffs informed the department that they had given all their medical reports to Fleisner, consisting of a letter from Dr. Schweiger, and indicated they had received from Fleisner only a copy of the hospital discharge summary. The summary was written by Dr. Grundahl and stated that both he and Dr. Muth concurred that Fleisner had suffered a myocardial infarction. The summary, however, did not discuss what might have caused the attack. Plaintiffs' letter then requested again that Rule IND 80.21 be invoked. This time the department's response, on April 19th, was as follows:

"We have already scheduled this matter for hearing, so are not invoking Rule 80.21 at this time, but we are sending a carbon copy of this letter to Attorney Charlton urging him to exchange with you such medical reports as he has or expects to present in support of this claim for compensation."

Nothing further was exchanged before the May 11, 1972, hearing.

Apparently plaintiffs-appellants' attorney saw a copy of Dr. Gordon's report for the first time just before the hearing. He commented at the start of the hearing that this put him at a "severe disadvantage."

The department did not contravene any statutory or administrative rules in refusing to require exchange of medical information and in refusing to adjourn the hearing.[6] Under Rule IND 80.21 [7] the parties may be required

[6] Since this case does not concern the violation of an agency's own rules, the supreme court case of *American Farm Lines v. Black Ball* (1970), 397 U. S. 532, 537–539, 90 Sup. Ct. 1288, 25 L. Ed. 2d 547, is inapposite. In *Black Ball* the court held the ICC did not abuse its discretion in granting temporary operating authority to the appellant despite the fact that appellant had not

to furnish medical reports to the department and the reports may then be turned over to the opposite parties "when deemed advisable" by the department. Similarly, sec. 102.17, Stats., provides that "the hearing may be adjourned in the discretion of the department." Rule IND 80.09 contains a comparable provision. Thus, both these matters are committed to agency discretion, and the scope of judicial review is thus narrow.[8]

Plaintiffs argue here that the department's actions deprived them of their due-process right to a fair hearing. What are the elements of a fair hearing in this situation? Sec. 102.18 (1) (a), Stats., provides: "All parties shall be afforded opportunity for full, fair, public hearing after reasonable notice." Sec. 102.17 (1) (am) provides:

"Either party shall have the right to be present at any hearing, in person or by attorney, or any other agent, and to present such testimony as may be pertinent to the controversy before the department."

In addition, this court has held that a fair hearing must include at least three elements: " '(1) The right to seasonably know the charges or claims proffered; (2) the right to meet such charges or claims by competent evidence; and (3) the right to be heard by counsel upon the probative force of the evidence adduced by both sides and upon the law applicable thereto.' " [9] These rights

submitted to the ICC all the application information required under ICC rules.

[7] Sec. 102.15 (1), Stats., gives the department rule-making power over procedural matters: "Subject to this chapter, the department may adopt its own rules of procedure and may change the same from time to time."

[8] *Moore v. Industrial Comm.* (1958), 4 Wis. 2d 208, 218, 89 N. W. 2d 788 (reviewing court must find "flagrant abuse of discretion").

[9] *State ex rel. Richey v. Neenah Police & Fire Comm.* (1970), 48 Wis. 2d 575, 580, 180 N. W. 2d 743.

were not infringed here. Plaintiffs-appellants had ample notice of the nature of Fleisner's claim in the application for compensation served upon them at the start of the proceedings. This application contained the names and addresses of all doctors who treated Fleisner. Plaintiffs-appellants had the right to and did compel Fleisner to be medically examined by a doctor of their own choosing who then testified at the hearing. At the hearing also plaintiffs had the opportunity to cross-examine Fleisner's doctor fully. Thus, we cannot conclude that plaintiffs-appellants were deprived of any substantial due process rights by the department's refusal to require parties to exchange medical reports.

Although the department's letters to the parties in regard to the exchange of medical information may have implied that if the parties did not voluntarily exchange the information they would be required to do so, it was still within the discretion of the department to make the final decision as to whether to invoke the rule calling for mandatory exchange of information. When the department chose not to invoke the rule, we cannot say that it abused its discretion by acting in a discriminatory and arbitrary fashion.

As to the examiner's refusal to adjourn the hearing to permit additional testimony, the Wisconsin case most closely on point here is *Moore v. Industrial Comm.*[10] In *Moore* this court held that the commission abused its discretion where it failed to rule on a petition to reopen a hearing because of crucial new evidence discovered between the time of the hearing examiner's decision and review by the commission. A hospital employee claimed he contracted tuberculosis while working in a TB ward. His claim was denied, largely based on a doctor's surprise testimony that the employee had been infected with the disease in the Army, long before commencing his

[10] (1958), 4 Wis. 2d 208, 89 N. W. 2d 788.

hospital employment. After the examiner's decision the employee discovered new evidence tending to refute the surprise testimony. The new evidence was duly described in a petition to reopen the hearing, but the commission, using a printed form, merely affirmed the examiner's decision without ruling on the petition. The court reversed the commission, holding that its failure to decide amounted to an abuse of discretion.

The facts in the case at bar are different. Here, all the evidence emerged at the hearing and the examiner had the opportunity to pass on the matter; nothing new was discovered before review by the department. Thus the department's blanket affirmance of the examiner's recommendation in this case must be deemed a complete decision on all the issues.

However, our case closely resembles a situation also discussed in *Moore* where, presented with a petition to reopen the hearing based on newly discovered evidence, the department actually renders a decision. As to such a situation, the court in *Moore* had this to say:

". . . Suffice it to say, it would need be a flagrant abuse of discretion by the commission, in denying an application to open up a case on the ground of newly discovered evidence, in order to permit a reviewing court to determine that the commission acted in excess of its powers." [11]

There was no abuse of discretion or denial of a fair hearing in the failure to grant an adjournment to permit Dr. Muth and Dr. Grundahl to testify. The hearing examiner decided their direct testimony was unnecessary since their reports had been received in evidence. Dr. Muth's report added nothing to the testimony of Dr. Schweiger, and the only new matter raised in Dr. Grundahl's report was the assertion that Fleisner's history indicated he began to suffer chest pains before entering

[11] *Id.* at page 218.

the trench. However, there is no indication that the direct testimony of Dr. Grundahl, or of Dr. Muth, would have added anything to the reports already in evidence. The record does not reveal that plaintiffs-appellants requested either doctor to supply affidavits or testimony to the commissioners of the department or to the circuit court, concerning what else they might have added. In the absence of any such offer of proof it cannot be concluded that the exclusion of the direct testimony of the doctors was an abuse of discretion.

Under sec. 102.23 (2), Stats., this court is required to disregard any error of the department "unless it be made to affirmatively appear that the plaintiff was damaged thereby." No such showing has been made here. If there were any department errors they were harmless.

First, as the department points out, plaintiffs made no attempt to obtain any medical reports directly from Dr. Muth or Dr. Grundahl, and both the names and addresses of these doctors were contained in the application for compensation served on plaintiffs February 22, 1972, approximately three months prior to the hearing. Plaintiffs-appellants protest that it is "common knowledge" that doctors will not release medical information without written authorization of the patient. Therefore, they argue, the only means to obtain the reports was through a department order pursuant to Rule IND 80.21. However, the Workmen's Compensation Act specifically authorizes the release of medical reports without patient consent. Sec. 102.13 (1), Stats., provides, in part:

". . . Notwithstanding any other statutory provisions, any physician attending a workmen's compensation claimant may furnish to the employe, employer, workmen's compensation insurance carrier, or the department information and reports relative to a compensation claim."

There is nothing in the record to indicate that plaintiffs have ever communicated with these doctors either before or after the hearing, nor that the doctors would have refused to honor a request for information. In light of sec. 102.13 (1), it cannot be presumed that the doctors would so refuse.

Second, despite their two requests that the department invoke Rule IND 80.21, plaintiffs-appellants nevertheless made no motion that the hearing be postponed until they received the reports of all treating physicians. The department's notice of hearing date sent to all parties a month prior to the hearing stated:

". . . If you are not prepared or entirely certain that you can fully proceed, notify us immediately; otherwise hearing must proceed to conclusion as scheduled."

Plaintiffs never notified the department they were not fully ready to proceed, despite knowing that they had not received all the medical reports. Plaintiffs requested a continuance for the first time during the hearing.

Finally, as pointed out above, nothing in the record shows what the doctors could have added by direct testimony to their written statements that were received into evidence. Without this information it cannot be concluded that plaintiffs-appellants were prejudiced by the failure of the doctors to testify.

*By the Court.*—Judgment affirmed.