BITUMINOUS CASUALTY COMPANY and N. M. Isabella, Inc., Plaintiffs-Respondents,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Defendant,

John A. WALDMAN, a/k/a John Gibson, Defendant-Appellant.†

Court of Appeals

No. 79–401. *Submitted on briefs October 17, 1979.— Decided June 2, 1980.*
(Also reported in 295 N.W.2d 183.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *James D. Sweet* and *Crisafi & Sweet* of Madison.

For the plaintiffs-respondents the cause was submitted on the brief of *Barnes A. Clark* and *Lawrence E. Bechler* and *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison.

Before Gartzke, P.J., Bablitch, J., and Donlin, J.

DONLIN, J. John Gibson, the claimant employee, began working for N.M. Isabella, Inc., the employer construction company, on September 13, 1971. After working one and one-half hours, his back gave out while he was lifting some forms. His doctor found he sustained total temporary disability and a permanent partial disability of two percent. His employer conceded both disabilities and paid Gibson accordingly.

In November, 1976, Gibson applied for additional disability compensation. Isabella denied additional liability, stating that it had no information to justify further compensation. After repeated, unsuccessful requests for information from Gibson, Isabella requested that the Department of Industry, Labor and Human Relations invoke rule **Ind 80.21**, Wis. Adm. Code,[1] which requires the parties to submit all medical reports on the matter. The Department denied this request and stated that Isabella could obtain medical authorizations from Gibson and thus procure any necessary medical information in that manner.

In June, 1977, Isabella suggested that a prehearing conference be held to evaluate the evidence. Isabella wished to learn of any additional medical findings that would indicate it had a possibility of additional liability in this case. A prehearing conference was never held, however. A DILHR hearing examiner responded that if evidence was presented at the hearing that constituted a claim substantially beyond what Isabella could have reasonably anticipated, a further hearing presumably would be permitted.

---

[1] Section **Ind 80.21**, Wis. Adm. Code, provides:

Physician's reports. Upon the request of the department, any party in interest to a claim under the workmen's compensation act shall furnish the department with copies of all physicians' reports in their possession or procurable by them. When deemed advisable by the department, copies of such reports may be furnished to the other parties in interest.

At the September, 1977, hearing, Gibson submitted medical reports indicating that his disability is two to three percent. He then called a qualified employment expert, who testified that Gibson is limited to unskilled work. The expert concluded on the basis of medical reports, Gibson's work history, and tests he had conducted that Gibson's permanent disability exceeds fifty percent for industrial purposes. Gibson submitted no other evidence except his own brief testimony and a medical bill.

Isabella requested a continuance to determine whether it wished to produce rebuttal evidence. The hearing examiner denied Isabella's request, noting that Isabella had sufficient opportunity to conduct its own investigations and prepare its own experts, and that he believed further delay would be useless. The examiner found that as a result of his injury, Gibson sustained fifty percent total permanent disability.

Isabella sought judicial review pursuant to sec. 102.23, Stats., alleging that DILHR had denied it due process of law by refusing to grant a continuance. Isabella further asserted that the testimony of the employment expert was incredible.

The circuit court concluded that the elements of a fair hearing had not been complied with in that Isabella had not been seasonably notified that Gibson claimed a fifty percent disability or that an employment expert would testify. The court further concluded that DILHR systematically deprived Isabella of due process. The court found that medical evidence was not exchanged because of the pending prehearing conference. The prehearing conference was never held, but Isabella was promised a further hearing if unanticipated evidence was introduced. Finally, Isabella's request for a continuance was denied. The court set aside DILHR's order and remanded the matter for an additional hearing to permit Isabella to present evidence on the question of Gibson's reduced

earning capacity. The court did not rule on the credibility of the employment expert.

The ultimate test to determine whether due process of law has been accorded a party to an administrative proceeding is the presence or absence of fair play.[2] The three elements of fair play in an administrative proceeding are: "(1) the right to seasonably know the charges or claims preferred; (2) the right to meet such charges or claims by competent evidence; and (3) the right to be heard by counsel upon the probative force of the evidence adduced by both sides and upon the law applicable thereto."[3] The three elements of fair play have been used to test the propriety of the Department's refusal to grant an adjournment, which is within its discretion under sec. 102.17(1)(a), Stats.[4]

Under the circumstances of this case, we conclude that the Department systematically deprived Isabella of due process by failing to hold a prehearing conference on the evidence, assuring Isabella a further hearing on new evidence, and then refusing to grant the promised continuance.

Gibson's injury occurred six years before the hearing. in this matter. At that time, Gibson's two percent per-

---

[2] *State ex rel. Richey v. Neenah Police & Fire Comm'n*, 48 Wis. 2d 575, 180 N.W.2d 743 (1970).

[3] *Id.* at 580, 180 N.W.2d at 746.

[4] *Theodore Fleisner, Inc. v. DILHR*, 65 Wis.2d 317, 222 N.W. 2d 600 (1974); *Nelson Mill & Agri-Center, Inc. v. DILHR*, 67 Wis.2d 90, 226 N.W.2d 435 (1975).

*Fleisner* and *Nelson Mill* held that denials of requested continuances in those cases were not abuses of discretion. *Fleisner* held that there had been no denial of due process. Neither case, however, involved a representation by the Department before the hearing regarding continuance or an issue of the exchange of nonmedical information. Except for a statement of the test of fair play, those decisions do not control the disposition of this case.

manent partial disability was assessed, and ten months elapsed between the filing for a hearing and the hearing on the nature and extent of Gibson's permanent disability. During that time, Isabella unsuccessfully sought current information regarding Gibson's claim, to assist in the evaluation of its potential further liability. Isabella was not advised of the identity of Gibson's witnesses nor the true nature of his claim until the hearing. At the hearing, Gibson claimed a fifty percent permanent partial disability. We believe this is substantially different than his original two percent permanent disability claim, and in light of DILHR's assurances that further hearings would be allowed under such circumstances, failure to grant a continuance deprived Isabella of the right to seasonably know the claim against it and the right to meet the claim with competent evidence.

The principle of fair play is an important factor in a consideration of due process of law. Parties in a legal proceeding have a right to be apprised of the issues involved and to be heard on such issues. A finding or order made in a proceeding in which there has not been a full hearing is a denial of due process.[5] The procedure followed by DILHR in this matter offends the traditional notions of fair play and due process by thwarting the usual discovery process to subsequently denying a party the opportunity to offer rebuttal evidence. Under the peculiar circumstances presented here, namely DILHR's assurances to Isabella that an opportunity for rebuttal would be afforded, we conclude that the circuit court's determination that Isabella was not afforded a fair hearing and was denied due process was correct.

Gibson contends that Isabella should have known that Wisconsin case law requires the testimony of an employment expert to establish permanent partial disability

---

[5] *Durkin v. Board of Police & Fire Comm'rs*, 48 Wis.2d 112, 180 N.W.2d 1 (1970).

resulting from nonschedule industrial injury.[6] Therefore, Gibson asserts, Isabella should have anticipated such an expert witness and prepared accordingly. This is an incorrect characterization of the pertinent case law, especially as it evolved at the time of Gibson's hearing.

Any award for permanent partial disability resulting from an industrial accident must be based upon some kind of prediction as to the impairment of earning capacity.[7]

"Thus it appears that the injuries of an applicant (non-schedule but permanent total or partial) are to be compared medically with injuries that would render a person permanently totally disabled for industrial purposes as provided in sec. 102.44(2), Stats., and *not* to injuries that would totally disable a person functionally without regard to loss of earning capacity." [Emphasis in original.][8]

Testimony must be offered that will permit such a comparison or there must be other evidence from which such a comparison may be inferred.[9] This testimony need not be presented by an employment expert; a qualified physician and even the Department itself can determine the percentage of such disability.[10] While an employment expert can establish lost earning capacity due to the

---

[6] Gibson cites *Balczewski v. DILHR*, 76 Wis.2d 487, 251 N.W. 2d 794 (1977) and *Kurschner v. DILHR*, 40 Wis.2d 10, 161 N.W.2d 213 (1968) in support of this proposition.

[7] *Pfister & Vogel Tanning Co. v. DILHR*, 86 Wis.2d 522, 273 N.W.2d 293 (1979); *Kohler Co. v. DILHR*, 42 Wis.2d 396, 167 N.W.2d 431 (1969).

[8] *Kurschner, supra* note 6 at 18, 161 N.W.2d at 217.

[9] *Kurschner, supra* note 6.

[10] *Kohler Co., supra* note 7; *Travelers Ins. Co. v. DILHR*, 85 Wis.2d 776, 271 N.W.2d 152 (Ct. App. 1978).

unavailability of work suitable for a claimant, no such expert is required under our case law in order for a claimant to make the *prima facie* showing.

In *Balczewski v. DILHR*,[1] decided just prior to Gibson's hearing in this matter, the supreme court reviewed at great length the qualifications and testimony of an employment expert. The court concluded that the expert's testimony was admissible and in fact, precisely that contemplated to establish the claimant's employment opportunities.

The claimant in *Balczewski* was an unskilled worker with a seventh grade education who was fifty-seven years old at the time of the accident. Her previous work history was entirely that of an unskilled laborer. At the time of her injury, her work required lifting bags weighing approximately eighty to ninety pounds. After her injury, she was permanently unable to resume this type of heavy work. She subsequently underwent surgery to alleviate her spinal injury, but she could not be restored to her preaccident physical condition. The evidence indicated that she was unable to vacuum, sweep, mop, hold objects such as glassware and milk cartons, or hold a reading book for more than five minutes. Her activities had to be interrupted by rest periods and her pain was constant and required medication.

In *Balczewski*, the claimant's attorney filed prehearing briefs advising that the claimant would rely on the testimony of an employment expert to demonstrate claimant's total loss of earning capacity. Despite this, the court concluded that the employer apparently failed to recognize the legal theory upon which the claimant proceeded, "and, because the claimant did not identify the theory of her claim with particularity," remanded for

---

[1] 76 Wis.2d 487, 251 N.W.2d 794 (1977).

the purpose of permitting the employer to present evidence in rebuttal of the claimant's *prima facie* case.[12]

We would follow the court's lead in *Balczewski*. Gibson did not identify his claim with particularity. Gibson had sustained a relatively minor injury six years earlier at age twenty-two. The injury did require treatment by a physician, but neither hospitalization nor surgery were indicated. Gibson's resulting disability was assessed at two percent permanent partial, and Isabella compensated him. Gibson had a high school education and had been a member of the United States Marine Corps. It is beyond dispute that Isabella had less information and less reason to anticipate the introduction of an employment expert than the employer in *Balczewski*.

Likewise, DILHR did not anticipate such evidence. When he denied Isabella's request for discovery, the Department hearing examiner indicated that he assumed Gibson had some medical support or a formal hearing would not have been requested. The hearing was originally scheduled for June 30, 1977, but Gibson's attorney requested a postponement until after Gibson's doctor appointment on July 14, 1977. Thus, Isabella and DILHR were led to believe that the evidence forthcoming would be medical evidence.

That employment experts have become commonplace in worker's compensation cases, perhaps through the ingenuity of attorneys, may or may not be a beneficial development in worker's compensation law. In any event, such experts are not now required, and at the time of Gibson's hearing were novel. Isabella's attorney might be presumed to anticipate such evidence in cases that warrant it under present worker's compensation practice. This does not justify DILHR's refusal to make good its assurance that Isabella would be afforded a further opportunity to offer rebuttal evidence.

*By the Court.*—Judgment affirmed.

---

[12] *Balczewski, supra* note 6 at 490, 251 N.W.2d at 796.

GARTZKE, P.J. *(dissenting)*. I would reverse the judgment of the circuit court and remand the matter to affirm the order of the department. The department did not, in my view, deny the employer due process.

Medical evidence alone does not establish a disability arising out of a nonschedule injury. *Kurschner v. ILHR Department,* 40 Wis.2d 10, 19, 161 N.W.2d 213 (1968). Although the employee's conceded functional disability was small, the employer was required to know that the percentage of loss of bodily function may be far less than the loss of earning capacity caused by a nonschedule injury. *Balczewski v. ILHR Department,* 76 Wis.2d 487, 251 N.W.2d 794 (1977), decided some five months before the hearing, showed that an employee with a fifty-five percent functional disability caused by a nonschedule injury may be totally disabled for industrial purposes. There the employee proved a total disability through an employment expert.

The employer never asked for advance information regarding the employee's nonmedical evidence. The employer repeatedly and consistently asked only for medical information. The promise by the department to the employer regarding a continued hearing dealt with the only expressed area of concern. No promise was made as to nonmedical aspects of the hearing. A more detailed statement of the facts than that made by the majority shows the lack of concern by the employer for anything except advance medical information.

The employer's answer to the application requested that the department invoke sec. Ind. 80.21, Wis. Adm. Code, to furnish the employer with medical reports. The employer repeated the request in February and March 1977. The department denied the request and stated that the employer could obtain medical authorizations from the employee and through that mechanism could obtain medical information and that a prehearing conference would be held at which information could be exchanged.

The employee's attorney advised the employer in March that he planned to confer with a medical witness April 12, 1977. April 14, 1977 the attorney told the employer that he planned to confer with another expert but did not identify the person or the field of expertise. April 18, 1977 the employer asked the attorney to identify the medical witnesses he proposed to present at the hearing. The attorney replied that the employer could make an appointment with any doctor it liked.

June 10, 1977 the employer suggested that a prehearing conference be held so as to learn whether there were "any additional medical findings available which would indicate that we have a possibility of additional exposure on this worker's compensation case." An examiner responded for the department that the employee's attorney had again requested a formal hearing and, "I must assume that he has medical support or he would not do so. If at the hearing, evidence is presented which in the opinion of the examiner constitutes a claim substantially beyond what could be reasonably anticipated by you, a further hearing will presumably be permitted." No prehearing conference was held.

As medical reports alone do not show the extent of the employee's disability arising out of a nonschedule injury, *Pfister & Vogel Tanning Co. v. DILHR*, 86 Wis.2d 522, 530, 273 N.W.2d 293 (1979), it is immaterial that the prehearing conference at which an exchange of medical reports could occur was never held.[1] A denial of due process therefore cannot be predicated upon failure to hold the conference.

---

[1] Section **Ind 80.21**, Wis. Adm. Code, cannot be employed to require an exchange of nonmedical information. Invocation of the rule is within the discretion of the department. The rule does not automatically require an exchange of information even if it is invoked. Invocation of the rule would not have disclosed the opinion of the employment expert in any event because the rule applies only to "physicians' reports."

The department's letter regarding a continued hearing was a representation to the employer regarding the circumstances under which a continued hearing would be held. That representation was based on the express assumption that the employee had "medical support" for additional compensation which he would present at the hearing. The next sentence in the letter, referring to "evidence" at the hearing constituting a claim substantially beyond what could be reasonably anticipated, must refer to medical evidence.

The medical evidence presented at the hearing was reasonably anticipated because it barely affected the two percent disability the employer had previously conceded. The devastating evidence presented at the hearing was *non*medical and was not embraced by the department's representation to the employer. Denial of due process through an unfulfilled promise or representation did not occur.

I take no satisfaction in what I believe is the required result in this case. If neither party must disclose the nature of the nonmedical evidence it will present, then each party may feel forced to retain an economic expert for fear that the other side will do so.[2] If the parties must produce not only medical but economic experts, the cost of worker's compensation hearings will be considerably increased. That may become a compelling reason, if the legislature or department deems it such, to force complete prehearing disclosures in the future. That reason does not, however, compel the conclusion that the party who did not predict how the other will meet his or her burden has been denied due process of law. A fair hearing makes possible, but does not ensure, a fair result.

[2] It probably is no coincidence that the expert who testified for the appellant employee in this case is the same expert who testified for the employee in *Balczewski v. ILHR Department,* 76 Wis.2d 487, 251 N.W.2d 794 (1977).