CITY OF BROOKFIELD, Village of Butler, Village of Elm Grove, Village of Menomonee Falls, City of Mequon and City of New Berlin, Plaintiffs-Appellants,†

v.

MILWAUKEE METROPOLITAN SEWERAGE DISTRICT and Wisconsin Public Service Commission, Defendants-Respondents.

Court of Appeals

*No. 87–0004. Submitted on briefs June 11, 1987.—Decided August 5, 1987.*
(Also reported in 414 N.W.2d 308.)

† Petition to review denied.

10

11

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *T. Michael Schober* and *Thomas G. Kreul* of *Schober & Radtke, S.C.* of New Berlin.

On behalf of the defendant-respondent, Milwaukee Metropolitan Sewerage District, the cause was submitted on the brief of *Michael J. McCabe, Patrick Halligan* and *Susan B. Anthony* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. The cities of Brookfield, Mequon and New Berlin and the villages of Butler, Elm Grove and Menomonee Falls (municipalities) appeal a judgment affirming a Public Service Commission (commission) order. The municipalities had filed a complaint against the Milwaukee Metropolitan Sewerage District (district) under sec. 66.912(5), Stats., alleging that the district's method of capital cost recovery was unreasonable or unjustly discriminatory. The commission found in favor of the district, concluding that the inclusion of the cost of "construction work in progress" (CWIP) in its capital cost rate base was a reasonable method recovering those costs. The municipalities sought review under sec. 227.52, Stats.[1] The circuit court affirmed the commission's decision. We conclude that there is substantial evidence to support

---

[1]Section 227.15, Stats. (1983–84), was renumbered sec. 227.52, Stats.

the commission's decision, and we therefore affirm the trial court.

The district is a municipal corporation which provides sewage treatment services for Milwaukee county (with the exception of the city of South Milwaukee). The district has also provided sewage treatment services for the municipalities involved in this appeal. At issue here is the method used by the district to finance certain construction work known as the Milwaukee Water Pollution Abatement Program. This project has an estimated cost of $2.8 billion in interest and capital charges. The project will extend from 1983 to 1996, although construction is divided into segments, each of which will take approximately two years to finish.

In the field of utility or public service financing there are a number of ways in which large construction projects are financed. One method is called CWIP (construction work in progress) because it adds the cost of plant expansion to the rate base as the plant is being constructed rather than waiting until the project is completed and the plant operational. The CWIP method, therefore, generates revenue immediately. However, current customers, not future customers, are paying for the cost of construction.

In an alternative method, the district finances the cost of the project and recovers it in the future through higher depreciation charges and an additional dollar return on capital for the increased cost of the plant. This method, called "allowance for funds used during construction" (AFUDC), means that until a project is actually in service, it does not generate cash to pay for itself and, in fact, builds up additional interest or carrying charges for future customers to pay.

The primary issue in this case is not which of the methods is the best or the fairest, nor is it which method the commission would have adopted for a utility directly under its regulatory jurisdiction. The issue before the commission and now before this court is whether the CWIP method used by the district was unreasonable or unjustly discriminatory within the meaning of sec. 66.912(5), Stats.[2] The municipalities claim that it is. They also contend that the rate base is inconsistent with officially stated policy or prior practice and that the case should be remanded to the commission to enable it to make proper findings of fact and conclusions of law.

Application of a legal standard to a particular set of facts presents a question of law. *Wisconsin Dep't of Transp. v. Office of the Comm'r of Transp.,* 135 Wis. 2d 195, 198, 400 N.W.2d 15, 16 (Ct. App. 1986). Generally, we need not defer to the administrative agency's decision. *Id.* However, labeling the commission's determination a conclusion of law does not result in this court totally disregarding the commission's determination. *See Nottelson v. DILHR,* 94 Wis. 2d 106, 116–17, 287 N.W.2d 763, 768 (1980). The determination of whether the district's charges are unreason-

---

[2]Section 66.912(5), Stats., provides in pertinent part:

**Review by public service commission.** ... [Upon] complaint to the public service commission by any user that charges, rules and practices under this section are unreasonable or unjustly discriminatory, according to the standards and criteria which the commission is required to follow under state or federal law,... or upon complaint of a holder of a revenue bond or other evidence of debt, secured by a mortgage on the sewerage system or any part thereof or pledge of the income of sewerage service charges, that charges are inadequate, the public service commission shall investigate the complaint.

14

able or unjustly discriminatory calls for a value judgment. Moreover, rate setting is an area in which the commission has special expertise. When an administrative agency's determination calls for a value judgment, an appellate court must decide to what extent it should substitute its evaluation for that of the agency. When the expertise of the agency is significant to the value judgment, the agency's decision, although not controlling, should be given weight. *Nigbor v. DILHR*, 120 Wis. 2d 375, 383–84, 355 N.W.2d 532, 537 (1984).

In its decision, the commission stated:

> [T]he standard to be used upon a complaint under s. 66.912(5), Stats., requires that in order for the commission to change a rate or practice under the complaint, the commission must find that the rate or practice is unreasonable or unjustly discriminatory. Otherwise, the rate or practice that is in effect must remain, even though the rate or practice is not one that the commission agrees with or would itself provide.
>
> ... [W]hile there are arguments for both sides on the CWIP issue, the arguments against including CWIP were not sufficient to conclude that such procedure was unreasonable. Therefore, the commission will not determine that the charges based on such procedures are unreasonable.

The inclusion of CWIP in the rate base of the district may discriminate against future generations, but the municipalities have the burden of showing that CWIP unjustly discriminates. The commission concluded that the municipalities have failed to meet that burden.

If legal conclusions of an administrative agency are reasonable, they will be sustained on appeal even if an alternate view is equally reasonable. *Chappy v. LIRC,* 128 Wis. 2d 318, 323, 381 N.W.2d 552, 555 (Ct. App. 1985), *aff'd,* 136 Wis. 2d 172, 401 N.W.2d 568 (1987). Since the commission's determination is in an area in which it has special expertise, and in light of our decision to give deference to the commission's determination because of that expertise, we conclude that the commission's determination is reasonable and therefore affirm it.

The municipalities also contend that the commission's authorization to include CWIP in the district's rate base is inconsistent with the commission's officially stated policy or prior practice and ask this court to reverse or remand the case. The municipalities rely upon a commission decision setting forth the reasons why and the circumstances under which CWIP could be included in the rate base of an *investor-owned utility.*[3] We reject the municipalities' argument.

The commission decision that the municipalities rely on concerns investor-owned utilities rather than a municipal corporation such as the district. The commission regulates all investor-owned utilities, setting their rates and practices, while the district sets its own rates and practices. The district's rates and practices are only subject to review by the commission upon a complaint under sec. 66.912(5), Stats. The commission's different conclusions do not indicate a

---

[3]The full title of the commission decision is *Investigation on Motion of the Commission Concerning Accounting and Rate Making Practices With Respect to Capital Costs of Construction Work in Progress,* No. 05–UA–1, Feb. 14, 1980.

divergence from stated policy but merely an acknowledgment that investor-owned utilities and municipal corporations are different types of entities. The two are set up differently and have different purposes. Since the commission's ability to regulate each varies, the commission's stance on the inclusion of CWIP in the rate base may be different. The municipalities could cite no case in which the commission refused to allow the inclusion of CWIP in the rate base of a municipal corporation. Therefore, the commission's decision here is not a divergence from prior practice or stated policy.

Finally, the municipalities argue that the commission's findings of fact did not comply with sec. 227.47, Stats.[4] That section provides in part:

> **Decisions.** Every proposed or final decision of an agency or hearing examiner following a hearing and every final decision of an agency shall be in writing accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise and separate statement of the ultimate conclusions upon each material issue of fact without recital of evidence.

In *State ex rel. Harris v. Annuity & Pension Bd.*, 87 Wis. 2d 646, 275 N.W.2d 668 (1979), the supreme court examined the role of findings of fact in relation to administrative agency decisions and discussed the requirements to ensure that the findings would be proper. To that end the court stated:

> No recitation of what evidence was believed and what was rejected was necessary to comply with

[4]Section 227.10, Stats. (1983–84), was renumbered sec. 227.47, Stats.

17

> the elements of due process. ... There is no requirement that the administrative agency indulge in the elaborate opinion procedure of an appellate court. It is sufficient if the findings of fact and conclusions of law are specific enough to inform the parties and the courts on appeal of the basis of the decision.

*Id.* at 661, 275 N.W.2d at 675.

Here, the commission's decision was more than sufficient. The commission stated each side's position for each issue and then stated how it decided each issue. Following that portion of the decision were "ultimate findings of fact" and conclusions of law. On the first issue before the commission—whether CWIP could be used to recover capital costs from the municipalities—the commission stated a summary of the proof each side had put before the commission, the commission's standard of review and the burden the municipalities needed to meet in order to prevail. The commission then stated that "arguments against including CWIP were not sufficient to conclude that such procedure was unreasonable" and in the ultimate findings of fact stated "[t]hat the inclusion by [the district] of CWIP in the rate base in the formula used to recover capital costs from the outside contract communities is not unreasonable or unjustly discriminatory." Nothing more is required of the commission. It is apparent from the briefs of the parties, as it was in *Harris,* that the parties were fully cognizant of the disputed items of evidence. Therefore, we reject the municipalities' argument.

*By the Court.*—Judgment affirmed.