GTE NORTH INCORPORATED, Petitioner-Appellant-Cross Respondent,

v.

PUBLIC SERVICE COMMISSION of Wisconsin, Respondent-Respondent-Cross Appellant.†

Court of Appeals

*No. 91-0552. Oral argument November 14, 1991.—Decided June 4, 1992.*

(Also reported in 486 N.W.2d 554.)

† Petition to review granted.

650

652

For the petitioner-appellant-cross respondent the cause was submitted on the briefs of *David E. Hightower* of *GTE North Incorporated* of Bloomington and *Thomas Terwilliger* of *Terwilliger, Wakeen, Piehler & Conway* of Wausau, and oral argument by *David E. Hightower*.

For the respondent-respondent-cross appellant the cause was submitted on the briefs of *Steven M. Schur* and *Michael S. Varda* of *Public Service Commission of Wisconsin* of Madison, and oral argument by *Michael S. Varda*.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J.   GTE North, Inc., appeals that part of an order that affirmed a decision of the Public Service Commission. The commission cross-appeals that part of the order that remanded to the commission. The issues are whether: (1) the commission provided a sufficient explanation for its interpretation of a tariff provision; (2) the commission had the authority to order a refund of compensation collected for providing untariffed service; and (3) the commission's notice of hearing provided adequate notice to the utility. We conclude that the commission did not provide a sufficient explanation of its interpretation, did not have the authority to order a refund, and did not give adequate notice. We affirm in part, reverse in part and remand to the commission.

## I.  BACKGROUND

The Public Service Commission ("the commission") regulates telecommunications utilities in Wisconsin under ch. 196, Stats. GTE North, Inc. ("GTE"), is a telecommunications utility under sec. 196.01, Stats. It provides local telephone service in parts of Wisconsin.

This case has a lengthy procedural history, including an appeal to this court, *General Tel. Co. of Wis. v. Auto-Owners Ins. Co.*, 140 Wis. 2d 10, 409 N.W.2d 133 (Ct. App. 1987). In 1979 and 1980, Harold Mohr signed two contracts with GTE to obtain time and temperature announcement services in the Eagle River and Minocqua exchanges. Persons calling these services would receive a short, recorded advertisement followed by the time and temperature. Mohr hoped to profit by selling the advertising space. A dispute arose between Mohr and GTE over the listing for these services in the local telephone directories. Mohr ceased payment on the contracts. GTE sued him and the company that provided his performance bond, seeking liquidated damages of approximately $55,000. Mohr counterclaimed for $425,000. On June 14, 1985, the jury found that Mohr, and not GTE, had breached the contracts, but that the breach had caused GTE no damages. GTE filed postverdict motions on July 3, 1985. *Id.* at 13–15, 409 N.W.2d at 134–35.

Before the court ruled on those motions, Mohr wrote a letter of complaint to the commission on July 10, 1985. He sought a determination that his time and temperature service contracts with GTE were invalid and unenforceable because GTE was not authorized under its tariffs to enter such agreements.[1] He also argued that

---

[1]As a utility, GTE is required to file schedules with the commission showing all rates, tolls and charges for its services. Section 196.19(1), Stats. It must also file all rules and regulations

655

GTE should have given his services a complimentary listing in the classified section ("yellow pages") of the directories.

By letter of September 10, 1985, commission staff determined that GTE had authority to enter the contracts under its tariff provisions for "Special Equipment or Special Assemblies of Equipment." The staff also concluded that GTE should have provided a classified listing under its directory listings tariff. GTE replied by letter, agreeing with the staff's decision on the contracts but appealing its decision on the listing. On October 29, 1985, the commission reopened and vacated the staff decision because of the pending litigation between Mohr and GTE.

Approximately one month later, the trial court ruled on the parties' postverdict motions and ordered a new trial. GTE appealed. We concluded that because the trial failed to resolve the question of whether Mohr was entitled to a complimentary classified listing under the GTE tariff, the contract theory of the case was not fully tried. We ordered a new trial using our discretionary power under sec. 752.35, Stats. We further concluded that this issue raised factual and policy questions that are peculiarly within the ambit of the commission, and we ordered the parties to resolve it by pursuing the administrative remedies of ch. 196, Stats. *General Tel. Co.,* 140 Wis. 2d at 19–23, 409 N.W.2d at 137–38.

Mohr reopened his complaint and the commission set the matter for hearing. The hearing was in July 1988. The commission mailed its decision in July 1989. It concluded that GTE's contracts with Mohr were unlawful because they were not authorized by tariff. It further

that in any manner affect its services, products or rates. Section 196.19(2), Stats. These documents are collectively known as tariffs. *General Tel. Co.,* 140 Wis. 2d at 20, 409 N.W.2d at 137.

concluded that Mohr did not have a right to complimentary classified directory listings under the GTE tariff, but that the exclusion of customers such as Mohr made the directory listings tariff unjustly discriminatory. The commission ordered GTE to refund all payments made by Mohr under the unlawful contracts and to revise its directory listings tariff. The commission denied GTE's petition for rehearing in August 1989.

GTE petitioned for circuit court review under secs. 227.52 and 227.53, Stats., in September 1989. In December 1990, the court affirmed in part and set aside and remanded to the commission in part. Both GTE and the commission appeal.

In a chapter 227 review of an administrative decision, we review the decision of the agency, not the trial court. *Richland School Dist. v. DILHR*, 166 Wis. 2d 262, 273, 479 N.W.2d 579, 584 (Ct. App. 1991), *review granted*, No. 90–1750 (Apr. 7, 1992). In this opinion, we work through the commission's ruling and address the appellant's and cross-appellant's issues as they relate to that ruling. We must affirm the decision of the agency unless there is a basis to do otherwise under sec. 227.57, Stats. Section 227.57(2), Stats.

## II. COMMISSION INTERPRETATION OF SPECIAL ASSEMBLIES TARIFF

The commission concluded that GTE's contracts with Mohr for time and temperature ("T&T") service were not specifically authorized by tariff. GTE does not dispute this. The commission also rejected GTE's argument that the contracts were authorized under its special assemblies tariff provision. GTE argues that the commission failed to adequately explain its rationale for

adopting the interpretation of the tariff that it did. The circuit court agreed and remanded to the commission.

The special assemblies provision states: "Special equipment or assemblies of equipment, for which provision is not otherwise made in this Tariff, may be provided where practicable, if not detrimental to any of the services furnished by [GTE]. The charge for such facilities will be based on the costs involved."

In its discussion of this issue, the commission first described the service that Mohr had contracted for. GTE was required to "install and furnish all necessary facilities required for an Audichron Time and Temperature System, including the automatic announcement equipment, associated apparatus, and announcement lines." In return, Mohr was to pay an Audichron Announcement Service Charge, an Audichron Announcement Access Charge, and Announcement Change Charges.

The commission then described a Time Announcement Service that GTE offered in the Wausau exchange from 1957 to 1978. This service was offered in its General Exchange Tariff under Miscellaneous and Supplemental Equipment and Services. The commission analyzed the service offered under general tariff in Wausau and found that it was, "in virtually every respect,'the same as the Time and Temperature Announcement Service offered by the Company to Mohr with the sole exception that only a time announcement was provided to the caller rather than a time and temperature announcement."

The commission concluded:

> The Company has not adequately explained why the Time and Temperature Announcement Service offered to Mohr in two separate exchanges was not offered under tariff rather than under contract pursuant to the Special Assemblies Tariff. As noted above,

the Commission has found that the [T&T] Announcement Service was substantially identical to the Time Announcement Service which the Company offered under tariff in the Wausau exchange for approximately 21 years. [Footnote omitted.] The Special Assemblies Tariff, to the extent that it authorizes the provision of telecommunications services in addition to the provision of equipment, must be limited to situations where the equipment or services are so unique to the user and location that the Company could not reasonably anticipate additional requests for the equipment or services by other customers or the same customer at other locations. This was clearly not the case with respect to the [T&T] Announcement Service at issue here. Accordingly, the provision of the [T&T] Announcement Service under contract was not justified under the Special Assemblies Tariff or any other tariff of the company. The untariffed provision of utility service is unlawful and the Commission so finds with respect to the [T&T] Announcement Service provided to Mohr.

GTE makes two arguments about this decision. The first is that the record does not support the commission's finding that the Wausau service offered under tariff and the service offered to Mohr under contract were virtually the same. We may set aside agency action or remand if the agency's action depends on any finding of fact that is not supported by substantial evidence in the record. Section 227.57(6), Stats.

GTE argues that its witness testified without contradiction that the services provided to Mohr were "one-of-a-kind," designed to meet the customer's unique specifications. Also in evidence, however, were the general tariff provisions covering the Wausau service. The com-

659

mission's finding that the Wausau service was "virtually the same" as that offered to Mohr was based on its reading of that tariff. The commission described several respects in which the services were similar. We may not substitute our judgment for that of the agency as to the weight of the evidence on any disputed fact. Section 227.57(6), Stats. We conclude that the commission's finding is supported by substantial evidence.

GTE also argues that the commission erred by failing to articulate sufficiently its reasons for concluding that the special assemblies provision authorizes GTE to provide only "telecommunications services which are either unique to the customer and location or for which a future demand cannot reasonably be foreseen."[2] The commission offered no discussion of its rationale for this conclusion, stating only that the provision "must be limited" in this manner.

The commission argues that its interpretation is necessary to prevent discrimination and is the only one possible under applicable statutes and rules. It argues that since the interpretation of a tariff is a question of law, this court may decide the issue.

Interpretation of a tariff may be a question of law, but it is nevertheless one on which we must defer to the agency's conclusion if it is rational. *See Sauk County v. WERC,* 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991). We must defer when the legal question is " 'intertwined with factual determinations or with value or policy determinations.' " *Id., quoting West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 12, 357 N.W.2d 534,

---

[2]This language is taken from the commission's "Conclusions of Law" at the end of its ruling. We note that the language is different from that used in the discussion and findings section of that ruling.

539-40 (1984). In the first appeal related to this dispute, we concluded that tariff interpretation was such a question.[3]

An agency must provide findings and conclusions that are specific enough to inform the parties and the courts on appeal of the basis of the decision. *City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 141 Wis. 2d 10, 17-18, 414 N.W.2d 308, 311 (Ct. App. 1987). For us to determine whether an agency's conclusion is rational, we must have some indication of its reasoning or the value or policy determinations upon which it relied. A review of the record in this case shows that it lacks any information specific enough to inform us of the basis for the commission's conclusion that GTE's special assemblies tariff must be limited to telecommunications services which are either unique to the customer and location or for which a future demand cannot reasonably be foreseen.

---

[3]We wrote:

Whether Mohr's T&T service constitutes a business entitled to complimentary yellow pages listings raises factual and policy questions that are peculiarly within the ambit of the [commission]. Defining terms that are unique to the telecommunications industry is outside conventional judicial knowledge. More important, a [commission] interpretation would further the legislative purpose behind the creation of an administrative agency: to afford a systematic method of factfinding and policymaking. The [commission's] interpretation of this tariff is more likely than an isolated court decision to reflect the general policy guideposts established by decades of administrative decisions.

*General Tel. Co.*, 140 Wis. 2d at 22, 409 N.W.2d at 138 (citation omitted). *See also, City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 141 Wis. 2d 10, 14-15, 414 N.W.2d 308, 309 (Ct. App. 1987) (whether utility's charges are unreasonable or unjustly discriminatory calls for value judgment).

Jeffrey Richter of the commission staff testified that the "unique" interpretation was an informal staff rule. It was not established by any published decision of the commission or by any statute or rule that he was aware of. He did not describe the reasons for the interpretation. He said the fact that Mohr's contracts were for two locations "might indicate that it's better put in a more general tariff than special assembly." The staff's brief to the commission did not advocate the adoption of the "unique" interpretation or offer policy or legal justifications for its adoption. The commission's ruling itself said only that the tariff "must be" limited in the manner described. Testimony or briefing that advocated such an interpretation might allow us to conclude that the commission adopted the offered reasoning, but here we lack even that basis to sustain its conclusion.

In its petition for rehearing before the commission, GTE disputed the tariff interpretation and objected to the lack of an explanation. The staff's reply to the petition stated, in essence, "the Commission has simply applied its expertise to the policy issue of the appropriate use of special assemblies tariffs and has determined under what circumstances such tariffs should be applied." Neither this response nor the commission's denial of the petition provided an explanation for its conclusion.

In its briefs for this appeal, counsel for the commission supported its conclusion with eleven pages of policy and legal analysis, and it argues that we may decide the issue. But the relevant expertise is at the commission, not this court. That was why we ordered GTE and Mohr to resolve the tariff issue before the commission in the first place. *General Tel. Co.,* 140 Wis. 2d at 22, 409 N.W.2d at 138. It may be that the analysis offered by counsel for the commission is sound, but it should not

662

take a petition for judicial review to elicit some indication that the agency's interpretation is based on reasoned application of its expertise. The commission need not "indulge in the elaborate opinion procedure of an appellate court," *State ex rel. Harris v. Annuity & Pension Bd.*, 87 Wis. 2d 646, 661, 275 N.W.2d 668, 675 (1979), but it must at least demonstrate that its interpretation of GTE's tariff is based on the kinds of value or policy judgments that, if rational, require our deference.

We conclude that the commission's interpretation of GTE's special assemblies tariff must be set aside. We remand to the commission for further action.

### III.  COMMISSION'S AUTHORITY TO ORDER REFUND

The commission concluded that the contract between GTE and Mohr was not authorized by any tariff and that, since the untariffed provision of service is unlawful, "Mohr has no responsibility to pay for" that service. The commission ordered GTE to remit to Mohr the payments he made under the contract, but it cited no specific authority for that order. GTE argues, and the circuit court agreed, that the commission lacks such authority. Although we have concluded that the tariff issue should be remanded to the commission, in the interest of judicial economy, we will address the commission's power to order a refund.

The extent of an agency's statutory authority is a question of law. We give no deference to the decision of an agency regarding its own powers. *Topp v. LIRC*, 133 Wis. 2d 422, 425, 395 N.W.2d 815, 817 (Ct. App. 1986).

GTE correctly states that the commission "has only those powers which are expressly conferred or which are necessarily implied by the statutes under which it operates." *Kimberly-Clark Corp. v. Public Serv. Comm'n*, 110 Wis. 2d 455, 461–62, 329 N.W.2d 143, 146 (1983). Any reasonable doubt as to the existence of an implied power should be resolved against the exercise of such authority. *Id.* at 462, 329 N.W.2d at 146. GTE does not dispute that the provision of untariffed service is unlawful, but it does dispute the commission's remedy. It argues that no statute gives the commission authority to order a refund under the circumstances of this case, and that no such authority is necessarily implied.[4] We first consider the statutes cited by the commission in its order.

The commission concluded that Mohr had no responsibility to pay for the untariffed service, pursuant to sec. 196.60(1)(a), Stats.[5] That statute provides that no public utility may charge, collect or receive from any person a greater or lesser compensation for any service rendered by it in the furnishing of telecommunications service, or for any service in connection therewith, than that prescribed in the published schedules or tariffs then in force. A utility violating this provision is guilty of

[4]GTE does not suggest that no remedy is possible if it provided untariffed service. It points to sec. 196.60, Stats., which provides for a forfeiture against any utility that collects more compensation than that prescribed in its tariffs. At oral argument, counsel for GTE said that a person who received untariffed service could seek a refund through a civil action.

[5]The commission's citation is apparently to the statute as it presently exists. However, the proper statute to apply is probably that in effect at the time of the acts alleged to be discriminatory. Although differently worded, sec. 196.60, Stats. (1977, 1979–80 and 1981–82), does not appear to compel a different result.

unjust discrimination. The statute provides a forfeiture for each offense.

The commission is correct in concluding that sec. 196.60, Stats., prohibits the provision of untariffed service. However, nothing in that statute authorizes it to order a refund.

We next consider the statutes cited in the commission's order as its general authority in this case. Sections 196.26 and 196.28, Stats., allow the commission to conduct an investigation and hearing, upon complaint or its own motion, regarding utility charges, acts, services or practices that may be unreasonable or unjustly discriminatory. The commission is impliedly authorized to issue an order following a hearing. The commission asserts that these statutes, in and of themselves, provide a complete statutory authorization for the commission's order. We disagree. These provisions authorize certain activities and procedures, but they do not address the content of the order that may follow such procedures. They do not authorize the commission to order a refund in this case.

The commission also cited sec. 196.37, Stats. Sections 196.37(1) and (2), Stats., provide that if the commission finds that any charge, practice, act or service is unjust, unreasonable, insufficient or unjustly discriminatory, otherwise unreasonable or unlawful, the commission shall determine and make any just and reasonable order relating to a charge, practice, act or service to be "imposed, observed and followed in the future."[6]

---

[6]Before its amendment in 1983, sec. 196.37(2), Stats., also provided that the commission "shall make such other order respecting such measurement, regulation, act, practice or service as shall be just and reasonable." However, this deletion was not

GTE argues that the phrase "in the future" limits secs. 196.37(1) and (2), Stats., to prospective application only, and does not authorize the commission to order a refund for the past provision of untariffed service. The commission asserts that the statute is not confined to a prospective remedy, but it does not explain why it is not.

We conclude that secs. 196.37(1) and (2), Stats., do not authorize the commission to order a refund in this case. If not for the phrase "in the future," we would agree that sec. 196.37, Stats., authorizes a refund to Mohr. However, the commission does not establish that the phrase "in the future" has a meaning other than the apparent one: that the commission may order future changes in utility charges, practices, acts or services, but may not order remedies for past charges, practices, acts or services that are now determined to have been unlawful.

It might be argued that GTE's continued retention of unlawfully received funds is a future act that can be addressed by ordering a refund to be made in the future. But such an interpretation makes the phrase "in the future" virtually meaningless, since every regulatory act could somehow be described as a future event. We recognize that our conclusion may impair commission enforcement of sec. 196.22, Stats., which prohibits a utility from collecting more or less compensation for tariffed services or from collecting for untariffed service. However, we see no exception in sec. 196.37, Stats., that allows us to conclude otherwise.

Finally, the commission cited sec. 196.02(1), Stats., which provides that the commission has jurisdiction to

intended to make any substantive change. Section 1, 1983 Wis. Act 53.

"supervise and regulate every public utility in this state and to do all things necessary and convenient to its jurisdiction."[7] The commission argues that ordering a refund is necessary and convenient to its supervision and regulation of utilities, but we need not decide this point. However broad may be the power granted to the commission under sec. 196.02(1), that power must be exercised in a way that is consistent with other, more specific, provisions of that chapter. We concluded above that sec. 196.37, Stats., would authorize a refund order if it did not include the phrase "in the future." When the legislature has placed such a limitation on an agency's authority, we will not interpret a broad and general grant in a way that conflicts with that limitation. *See Grogan v. Public Serv. Comm'n,* 109 Wis. 2d 75, 80–81, 325 N.W.2d 82, 85 (Ct. App. 1982).

On appeal, the commission also cites sec. 196.44(1), Stats., which provides: "The commission shall inquire into the neglect or violation of the laws of this state by public utilities . . . and shall enforce all laws relating to public utilities. . . ." The commission argues that, inherent in its duty to enforce the law, is the power to issue orders against utilities directing that the law be carried out. This argument fails for the same reason as the previous one. Whatever general power the commission has under this section, its enforcement of utility laws must be consistent with other laws relating to public utilities.

The commission also offers arguments explaining how its refund order is consistent with Wisconsin public utility policy and with its own past practices. However,

---

[7]Before its amendment in 1983, sec. 196.02(1), Stats., gave the commission "power and jurisdiction." However, no change in meaning was intended. Section 1, 1983 Wis. Act 53.

because the agency has only the authority given by the legislature, these arguments cannot overcome the absence of express or implied statutory power.

We conclude that because the commission did not have authority to order a refund of compensation paid for untariffed service, that part of its order must be set aside.

## IV. COMMISSION'S RULING ON DIRECTORY LISTINGS TARIFF

After concluding that GTE's contracts with Mohr were unlawful, the commission also concluded that GTE had discriminated against Mohr by failing to provide him with the complimentary classified directory listing that was provided to certain other business customers. It concluded that GTE's directory listings tariff was unjustly discriminatory and ordered the company to modify it. GTE argues that it did not receive adequate notice that this issue would be addressed, and that if it had such notice, it would have submitted evidence on that point.

Provisions of two tariffs are relevant. The company's general exchange tariff provided that business rates apply if the service meets any of a number of criteria. These include, among others, locations of a business nature such as clubs, schools, hospitals, libraries and churches; any location where the directory listing denotes association or affiliation with an enterprise of a commercial, social or religious nature; or when the telephone number is regularly advertised for business purposes.

The other relevant provisions are from the directory listings tariff:

1.4. One alphabetical ["white pages"] directory listing . . . will be provided without additional charge in the directory for the exchange from which service is provided for each individual or party line main station service, each joint user service, each service station service, each mobile telephone service, each private branch exchange system, each Centrex system, each special reverse toll service, or each group of numbers in rotary sequence.

1.4.1. In addition, one ["yellow pages"] directory listing will be provided without charge in the classified section of the same directory for each service indicated above which is classified as a business service.

The commission found that Mohr's service was a business service under the general exchange tariff because the telephone number was regularly advertised for business purposes. It concluded that Mohr was not entitled to a classified listing under the directory listings tariff, since his business service was not one of the types listed in paragraph 1.4. It further concluded that, by providing a complimentary classified listing to only certain types of business service, the directory listings tariff discriminated unjustly against other classes of business service which use the local exchange network in a manner which is functionally similar to those receiving complimentary listings. The commission ordered GTE to revise its directory listings tariff to remedy the discrimination.

Under secs. 196.26(2) and 196.28(2) and (3), Stats., the commission must give the utility notice of "the matter to be considered and determined at the hearing." The commission's notice of hearing and investigation in this case described the history of the dispute between Mohr and GTE. It stated that "the commission will further

669

investigate this time and temperature service and equipment offering and the associated directory listings." The issues to be determined were stated as:

> 1. Did Harold Mohr have a right to receive yellow pages directory listings without charge for his time and temperature services?
>
> 2. What, if any, damages is Harold Mohr entitled to under Chapter 196 . . . on account of GTE's failure to provide yellow pages directory listings without charge for his time and temperature services?[8]

We may remand to the agency for further action if we conclude that either the fairness of the proceedings or the correctness of the action has been impaired by a material error in procedure or a failure to follow prescribed procedure. Section 227.57(4), Stats.

GTE argues that the notice does not include the issue of whether its directory listings tariff was unjustly discriminatory. We agree. The commission's conclusion of discrimination was a large step beyond deciding whether Mohr had "a right to receive" a yellow pages listing.

Because GTE was obligated under sec. 196.22, Stats., to provide service consistently with its tariffs, the question of whether Mohr had such a right is one that must be determined under the tariffs as they existed at the time. It is simply a matter of applying the relevant tariffs to the facts. The commission's notice informed GTE that this issue would be decided, and the commis-

---

[8]By agreement at the start of the hearing, the parties added the issue of whether GTE was authorized to contract with Mohr for T&T service.

sion held that under the tariffs then in effect, Mohr did not have such a right.

However, the commission then went on to hold that this result was unjustly discriminatory against Mohr and certain other business customers, and it ordered GTE to revise the tariff. This second conclusion does not answer the question of whether Mohr had the right to a listing, but instead answers whether Mohr *should have* had a right to the listing, for policy and legal reasons, and whether the tariff must be modified to prevent future discrimination.

We conclude that the commission's notice was not broad enough to inform GTE that its tariff might be held discriminatory, and that the fairness of the proceedings was impaired by this inadequate notice. We set aside that part of the commission decision holding GTE's tariff discriminatory and ordering it to be revised.

GTE also argues that the commission's conclusion that its directory listings tariff unjustly discriminated was arbitrary and capricious. It was so, according to GTE, because the commission failed to explain its apparent change of position from "approving" a similar provision in an earlier tariff. Because we have concluded that the discrimination issue was not properly before the commission, we need not address this issue.

In summary, we conclude that the commission did not provide a specific enough basis for its conclusion regarding GTE's special assemblies tariff, and we remand. We also conclude that the commission does not have authority to order a refund of compensation collected for untariffed service, and we set aside that part of the commission's decision ordering such a refund. Finally, we conclude that the commission did not provide adequate notice that it would determine whether GTE's directory listings tariff was discriminatory, and

671

we set aside the commission's conclusions and orders that relate to that issue.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.