WISCONSIN BELL, INC., d/b/a
Ameritech Wisconsin,
Plaintiff,

v.

Ave M. BIE, Robert M. Garvin and Joseph P. Mettner, Commissioners of the Public Service Commission of Wisconsin (in their official capacities and not as individuals), Defendants,

and

Worldcom, Inc., TDS Metrocom, Inc. and Time Warner Telecom of Wisconsin, L.P., Defendants–Intervenors.

No. 00 C 0755–C.

United States District Court,
W.D. Wisconsin.

May 15, 2002.

Jordan J. Hamaidan, Madison, WI, for Plaintiff.

Mary M. Stevens, Public Service Commission of WI, Madison, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for declaratory and injunctive relief brought pursuant to the Telecommunications Act of 1996 and the due process clause of the Fourteenth Amendment. Plaintiff Wisconsin Bell, Inc., d/b/a Ameritech Wisconsin, challenges the Public Service Commission of Wisconsin's determination in its November 8, 2000 order that calls to Internet service providers, also known as ISPs, are "a type of local telecommunications traffic for purposes of 47 U.S.C. § 251(b)(5) and 47 C.F.R. § 51.701(a)" and thus subject to reciprocal compensation. Plaintiff argues that this ruling is contrary to federal law as set forth in a recent Federal Communications Commission order, issued after remand of a case from the Court of Appeals for the District of Columbia Circuit. Defendant-intervenor TDS Metrocom, Inc. cross-claims and challenges (1) the bifurcated rate structure in the commission's order and the admission of "Exhibit 36" as a violation of due process and (2) the bifurcated rate structure as contrary to federal law.

The motions presently before this court are essentially an appeal of the Public Service Commission of Wisconsin's administrative ruling regarding its classification of ISP-bound traffic as local and its adoption of a bifurcated rate structure for all local calls.

Because I find that defendant commissioners' order is contrary to federal law, I will vacate the portion of the order holding that ISP-bound traffic is a type of local telecommunications traffic for purposes of 47 U.S.C. § 251(b)(5) and 47 C.F.R. § 51.701(a) and remand the matter so that the commissioners can conform their order, as of June 14, 2001, to the Federal Communication Commission's order on remand. I find that defendant commissioners violated the due process rights of defendant-intervenor TDS. Accordingly, I will vacate the portion of the order that establishes a bifurcated rate structure for local traffic other than ISP traffic. Finally, because I am vacating the bifurcated rate structure, it is unnecessary to discuss whether admitting "Exhibit 36" violates due process or whether the bifurcated rate structure is in conflict with federal law.

## BACKGROUND

The Telecommunications Act of 1996 restructured local, monopolistic telephone service by requiring incumbent local exchange carriers to facilitate market entry to competitors. Among its many provisions, the Act obligates local exchange carriers "to establish reciprocal compensation arrangements for the transport and termination of telecommunications." 47 U.S.C. § 251(b)(5). Carriers are expected to negotiate the rate and terms of reciprocal compensation. 47 U.S.C. § 252(a). Nevertheless, carriers may waive recovery of reciprocal compensation by mutually agreeing to treat the exchange of local intercarrier traffic as a wash under a "bill-and-keep" arrangement. 47 U.S.C. § 252(d)(2)(B)(i). The Act requires incumbents to attempt to negotiate and agree on the interconnection terms with new entrants. 47 U.S.C. § 252(a). If the parties fail to reach agreement through private negotiations, the state commission is authorized to arbitrate disputed issues. 47 U.S.C. § 252(b)(1).

As new entrants and incumbents have interconnected their local exchange networks, some calls originating on one carrier's network are completed, or "terminat-

ed," on another carrier's network. For example, if a customer of carrier A calls a customer of carrier B, the call originates on carrier A's equipment but terminates on carrier B's equipment. Absent a reciprocal compensation arrangement, carrier A would charge its customer for the call, but carrier B would receive no compensation for the use of its equipment in terminating the call. In a reciprocal compensation regime, carrier A pays carrier B on a per minute basis for terminating the local call. This insures that both carriers are compensated for local intercarrier calls. In contrast, under a "bill-and-keep" arrangement, each carrier recovers from its own customers the costs of terminating calls that originate with other carriers.

When the Act was drafted, the Federal Communications Commission and others assumed that reciprocal compensation among carriers would be generally balanced as calls moved in both directions over interconnected local networks. According to the FCC, the explosion in Internet use has upset the assumption that reciprocal compensation among carriers would be more or less balanced. Because calls to Internet service providers "flow[ ] exclusively in one direction," so does the "money in a reciprocal compensation regime." *Order on Remand: In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996 Intercarrier Compensation for ISP–Bound Traffic,* 2001 WL 455869, 16 F.C.C.R. 9151, ¶ 21 (April 27, 2001). This has led to "an opportunity for regulatory arbitrage" as new carriers rushed to sign up Internet service providers in order to obtain a steady flow of "reciprocal" compensation that in fact required little in the way of reciprocity. *Id.* In fact, the FCC has found, new carriers bill incumbents approximately $2 billion annually for reciprocal compensation, 90% of which represents traffic to Internet service providers. *Id.* at ¶ 5.

On February 26, 1999, the FCC issued a declaratory ruling in which it held that locally dialed ISP-bound traffic is interstate, within its jurisdiction under 47 U.S.C. § 201 and not subject to reciprocal compensation under 47 U.S.C. § 251(b)(5). *See Declaratory Ruling: IN THE MATTER OF IMPLEMENTATION OF THE LOCAL COMPETITION PROVISIONS IN THE TELECOMMUNICATIONS ACT OF 1996; INTERCARRIER COMPENSATION FOR ISP–BOUND TRAFFIC,* 1999 WL 98037, 14 F.C.C.R. 3689 (Feb. 26, 1999). However, on March 24, 2000, the Court of Appeals for the District of Columbia Circuit vacated and remanded the FCC's declaratory ruling on the ground that the FCC had failed to provide a satisfactory explanation for not viewing local exchange carriers that terminate calls for ISPs as terminating local telecommunications traffic and for treating such traffic as "exchange access" rather than "telephone exchange service." *See Bell Atlantic Telephone Companies v. Federal Communications Commission,* 206 F.3d 1, 9 (D.C.Cir.2000). Under the Act, a call is "exchange access" if offered "for the purpose of the origination or termination of telephone toll services," 47 U.S.C. § 153(16), whereas "telephone exchange service" refers to "service within a telephone exchange," 47 U.S.C. § 153(47). *Id.* at 8–9.

While the FCC was responding to the court of appeals' remand, the Public Service Commission of Wisconsin issued an order on November 8, 2000, declaring that "[a]n Internet call originated by an end user, and terminated to an Internet Service Provider located within that end user's local calling area, is a type of local telecommunications traffic for purposes of 47 U.S.C. § 251(b)(5) and 47 C.F.R. § 51.701(a)" and thus subject to reciprocal compensation. *See Order Establishing a Method for Pricing Reciprocal Compensa-*

*tion in Interconnection Agreements,* Docket 05–TI–283, at 3 (Nov. 8, 2000).

In response to the commission's order, plaintiff filed this lawsuit on December 28, 2000, challenging the reciprocal compensation portion of the commission's order as preempted by federal law. On January 30, 2002, I granted defendant-intervenor TDS's unopposed motions to amend its answer and to file a cross-claim against defendant commissioners regarding the order's bifurcated rate structure. *See* Order dated Jan. 30, 2002, dkt. # 62. Defendant-intervenor TDS filed a cross-claim against defendant commissioners in their official capacities. *See* TDS Amended Answer and Cross–Claim, dkt. # 63, at 12–13.

On April 27, 2001, the FCC concluded in its order on remand that "ISP-bound traffic is not subject to the reciprocal compensation obligations of section 251(b)(5)" because of the limiting effect of § 251(g) on § 251(b)(5). *Order on Remand: In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996; Intercarrier Compensation for ISP–Bound Traffic,* 2001 WL 455869, 16 F.C.C.R. 9151, ¶ 3 (April 27, 2001). The FCC stated explicitly that its order on remand "does not preempt any state commission decision regarding compensation for ISP-bound traffic for the period prior to the effective date of the interim regime [June 14, 2001]." *Id.* 2001 WL 455869, 16 F.C.C.R. 9151, at ¶ 81. The order on remand has been appealed. *See Worldcom, Inc. v. Federal Communications Commission,* No. 01–1218 (D.C.Cir.) (filed Sept. 27, 2001).

## OPINION

### A. *Reciprocal Compensation*

As it did in its declaratory ruling, the FCC held in its order on remand that calls to Internet service providers are not subject to reciprocal compensation under 47 U.S.C. § 251(b)(5). *Order on Remand,* at

¶ 30. Although the outcome was the same in both orders, the FCC's rationale was quite different. In its order on remand, the FCC concluded that "ISP-bound traffic falls outside section 251(b)(5) on its construction of sections 251(g) and (i)—not, as in the previous [declaratory ruling], on the theory that section 251(b)(5) applies only to 'local' telecommunications traffic and that ISP-bound traffic is interstate." *Id.* at ¶ 30 n. 56. In other words, the FCC did not rule in its order on remand (as it did in its declaratory ruling) that calls to Internet service providers were interstate for the purpose of reciprocal compensation. Rather, the FCC concluded that reciprocal compensation applies to all telecommunications traffic (not only local traffic) except for three specific categories enumerated in § 251(g), which includes the Internet service provider traffic category of "information access." *Id.* at ¶¶ 32, 34. Thus, the FCC held, this traffic is exempt from reciprocal compensation. *Id.* at ¶ 42. In order to deal with the "opportunity for arbitrage" and avoid a "flash cut" to a pure bill-and-keep regime (in which each carrier recovers from its own customers the costs of terminating local calls that originate with other carriers), the FCC adopted a 36–month transition period in which existing carriers that are re-negotiating expired or expiring interconnection agreements are subject to "a gradually declining cap on the amount that [they] may recover for delivering ISP-bound traffic." *Id.* at ¶¶ 7, 77 and 81. However, new carriers who enter the market must exchange ISP-bound traffic on a bill-and-keep basis. *Id.* at ¶ 81.

■ The parties agree that under the Hobbs Act, 28 U.S.C. § 2342(1), the exclusive forum for challenging an FCC order is a federal court of appeals. *Peoria v. General Electric Cablevision Corp.,* 690 F.2d 116, 119 (7th Cir.1982) (challenges to "final

orders of the FCC … may be brought only in a federal court of appeals"). Therefore, this court cannot review the FCC's finding that ISP-bound traffic is not subject to reciprocal compensation because it is "information access" under § 251(g). The only reciprocal compensation question before the court is whether defendant commissioners' order should be vacated and remanded so that they may conform their order to that of the FCC's with respect to ISP-bound traffic and reciprocal compensation. I find that remand is appropriate.

■ Defendant commissioners concede that the portion of their November 8, 2000 order in which they ruled that reciprocal compensation applies to ISP-bound traffic violates federal law as of June 14, 2001 (the effective date prescribed by the FCC in its order on remand). *See* Resp. on Merits, dkt. # 52, at 3–4, 12. Plaintiff agrees. *See* Reply on Merits, dkt. # 68, at 2. Defendant commissioners point out that if the Court of Appeals for the District of Columbia Circuit overturns the FCC order, they would no longer be bound by this ruling. This might well be true. However, unless and until the FCC's order on remand is overturned by the court of appeals, it remains the prevailing voice in the debate over reciprocal compensation for ISP-bound traffic.

■ Notwithstanding defendant commissioners' concession that their order violates federal law as of June 14, 2001, plaintiff argues that when the FCC interpreted the Telecommunications Act in its order on remand, the FCC was explaining what the Act had always meant since the time of its enactment despite the fact that it made the order and compensation regime prospective. In other words, plaintiff argues that this court should construe the FCC's explicitly prospective order as applying retrospectively.

■ In support of its position, plaintiff relies on *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 311–12, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), in arguing that the FCC's interpretation of the Act is analogous to judicial construction of a statute and should operate retrospectively. This argument fails for two reasons. First, "[f]ederal regulations do not, indeed cannot, apply retroactively unless Congress has authorized that step explicitly" and "[n]o statute authorizes the [FCC] to adopt regulations with retroactive effect." *Jahn v. 1–800–FLOWERS.com, Inc.,* 284 F.3d 807, 810 (7th Cir.2002). In addition, the question of retroactivity does not arise in an FCC ruling that is merely interpretive. *See Manhattan General Equip. Co. v. Commissioner,* 297 U.S. 129, 135, 56 S.Ct. 397, 80 L.Ed. 528 (1936) (explaining that agency ruling interpreting statute "is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand"); *Farmers Telephone Co., Inc. v. Federal Communications Commission,* 184 F.3d 1241, 1250 (10th Cir.1999); *McKenzie v. Bowen,* 787 F.2d 1216, 1222 (8th Cir.1986) ("An interpretive rule … clarifies or explains existing law or regulations."); *Borden, Inc. v. National Labor Relations Board,* 19 F.3d 502, 510 (10th Cir.1994) (holding that there are no retroactivity concerns when agency's ruling does not "overrule[ ] any controlling precedent upon which [petitioner] relied to its detriment").

Second, the FCC order on remand did not alter existing rights or obligations under current carrier agreements. "Changing today's financial consequences of an earlier transaction is the paradigm of retroactivity." *Jahn,* 284 F.3d at 810 (citing *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). The FCC's order on remand held explicitly that (1) "[t]his Order does not preempt any state commission decision re-

garding compensation for ISP-bound traffic for the period prior to the effective date of the interim regime [June 14, 2001]"; (2) interim compensation rates apply only "as carriers re-negotiate expired or expiring interconnection agreements"; and (3) the order "does not alter existing contractual obligations, except to the extent that parties are entitled to invoke contractual change-of-law provisions." *Order on Remand,* at ¶ 82. In this case, the FCC ruling affects future interconnection agreements, not existing agreements. It is neither retroactive on its face nor as applied.

For the reasons stated above, I will vacate the portion of the commissioners' order in which they concluded that ISP-bound traffic is a type of local telecommunications traffic for purposes of 47 U.S.C. § 251(b)(5) and 47 C.F.R. § 51.701(a) and remand the matter so that the commissioners can conform their order, as of June 14, 2001, with the FCC's order on remand.

### B. *Bifurcated Rate Structure*

Defendant-intervenor TDS argues that the court should remand that portion of the commission's November 8, 2000 order that establishes a bifurcated rate structure because defendant commissioners violated TDS's federal procedural due process rights by failing to provide it with adequate notice. (A bifurcated rate is a two-component rate in which a set-up charge applies to the first minute and a duration charge applies to subsequent minutes.) Specifically, TDS argues that defendant commissioners provided notice of their intention to investigate and determine a reciprocal compensation rate structure for ISP calls only and, in the end, exceeded the scope of that notice by determining the rate structure for *all* local traffic in the form of a bifurcated plan.

Defendant commissioners argue that this court lacks subject matter jurisdiction because "federal courts may review a state commission's actions *only* for com-

pliance with the requirements of [47 U.S.C.] § 251 and § 252." *MCI Telecommunications v. Illinois Commerce Commission,* 183 F.3d 558, 564 (7th Cir.1999) (emphasis added); *see also Illinois Bell Telephone Co. v. Worldcom Technologies, Inc.,* 179 F.3d 566, 571 (7th Cir.1999). The commissioners assert correctly that §§ 251 and 252 do not establish procedures for state commissions. Although defendant commissioners seize upon the court of appeals' use of the word "only" in *MCI Telecommunications,* they fail to recognize that there were no procedural due process claims at issue in that case. *Id.* Curiously, defendant commissioners do not explain why this court does not have federal question jurisdiction stemming from TDS's assertion of a violation of its federal due process rights coupled with its request for declaratory and injunctive relief. It is well established that a lack of adequate procedures by state officials may implicate federal due process rights. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (Eleventh Amendment does not preclude suits against state officials for injunctive relief); *see also MCI Telecommunications,* 183 F.3d at 563 ("suits against state officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment under the *Ex parte Young* doctrine"). This is true regardless of the recited procedures, or lack thereof, in §§ 251 and 252 of the Telecommunications Act. Therefore, at a minimum, this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 to review TDS's due process claim.

In a case such as this, the first inquiry in a due process challenge is whether there has been a deprivation of a protected property interest. *See* U.S. Const. amend. XIV ("nor shall any State deprive any person of life, liberty, or prop-

erty, without due process of law"); *see also Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Only after finding a deprivation of a protected interest does a court look to see whether the state's procedures comport with due process. *Id.* TDS argues that the commissioners' ruling regarding bifurcated rates affected its property interest in compensation for local traffic other than ISP traffic. (The commissioners fail to address the issue of a property interest; they argue only that TDS received adequate notice.) TDS contends that under Wis.Stat. §§ 196.26(2) and 196.28(2) and (3), "the commission must give the utility notice of 'the matter to be considered and determined at the hearing.' " *GTE North Inc. v. Public Service Commission,* 169 Wis.2d 649, 669, 486 N.W.2d 554, 562 (Ct.App.1992) (quoting Wis.Stat. § 196.26(2)), *rev'd on other grounds, GTE North Inc. v. Public Service Commission,* 176 Wis.2d 559, 500 N.W.2d 284 (1993); *see also Bituminous Casualty Co. v. Department of Industry, Labor & Human Relations,* 97 Wis.2d 730, 734–35, 295 N.W.2d 183 (Ct.App.1980) (due process requires notice of issues involved); Wis. Stat § 227.57(4) ("The court shall remand the case to the agency for further action if it finds that either the fairness of the proceedings or the correctness of the action has been impaired by . . . a failure to follow prescribed procedure."). The commissioners note that although this hearing was not a "contested case," they proceeded under the Wisconsin Administrative Procedures Act, Wis.Stat. § 227.44, which covers contested cases, rather than § 196.26(2), which covers "investigations." In any event, Wis.Stat. §§ 227.44 and 196.26(2) mandate essentially the same notice and hearing requirements. Specifically, § 227.44 requires that "all parties shall be afforded an opportunity for hearing after reasonable notice." Wis.Stat. § 227.44(1). Such state-mandated requirements establish that TDS has a property interest suffi-

cient to implicate the due process clause. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (state law defines existence of property and liberty for purposes of procedural due process). Thus, the question becomes whether the commission's procedures comported with due process. *See Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (Once state has granted property interest, due process protections are necessary "to insure that the state-created right is not arbitrarily abrogated."); *see also Vitek v. Jones,* 445 U.S. 480, 488–89, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)

▮ The commission issued a "Notice of Proceedings and Investigation and Prehearing Conference" entitled "Investigation of the Compensation Arrangements for the Exchange of Traffic Directed to Internet Service Providers," 05–TI–283 (Dec. 14, 1999), which reads in relevant part as follows:

> **THIS IS A PROCEEDING TO** investigate and determine what compensation arrangement should apply to Internet traffic that is directed to an Internet Service Provider (ISP) served by a competing local exchange carrier. Generally, an Internet call is dialed on a seven-digit basis and is directed to an ISP (or at least the ISP's point of presence) in the same local service area as the caller. In the past, several local exchange companies have disputed whether this traffic should be classified as local traffic or interexchange, interstate traffic.

> This proceeding will *not* set reciprocal compensation rates for individual companies. The purpose of this proceeding is to establish a method for establishing the compensation for Internet traffic that individual parties will then apply in future negotiations and arbitrations of

interconnection agreements in Wisconsin.

TDS's Br. Requesting Remand of Bifurcated Rate, dkt. # 67, at Exh. A.

On June 9, 2000, the commission released an "Issues List" that identified five issues for the hearing, which are as follows:

1. State and Federal Jurisdiction: To what extent does the [commission] have jurisdiction to regulate the rates and conditions of service for dial-up access to Internet Service Providers? Assuming [c]ommission jurisdiction, is a generic procedure appropriate? If not, what is the appropriate procedure to investigate and determine what intercarrier compensation arrangement(s) should apply to dial-up Internet traffic?

2. Should a separate class of service be created for dial-up Internet traffic? How can Internet traffic be distinguished from other categories of telephone calls?

3. What cost elements contribute to the overall cost of an Internet call? Does the cost of an Internet call vary depending upon the carrier originating/terminating the call?

4. What compensation arrangement or methodology should carriers employ to compensate each other for completing a dial-up Internet call? Should the originating carrier compensate the terminating carrier for completing a dial-up Internet call? Should reciprocal compensation, "bill and keep", or other methodologies be used? How should the selected methodology work?

5. What competitive incentives or other policy implications exist with each proposed compensation arrangement for switching traffic directed to Internet Service Providers?

*Id.* at Exh. B. (Although it is not entirely clear from the briefs, it appears that the "Issues List" was created from the sugges-

tions of those attending the prehearing conference.)

The Court of Appeals for the Seventh Circuit has held that "notice must give the affected person or entity sufficient information to permit adequate preparation for an impending hearing." *Hartland Sportsman's Club v. Town of Delafield,* 35 F.3d 1198, 1201 (7th Cir.1994) (citing *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 14, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978)). TDS argues that the commission's notice was inadequate to inform it that the commission would determine a rate compensation plan applicable to *all* local calls, not just calls to ISPs. In response, the commissioners argue that the notice was adequate because adopting a rate compensation plan for all local calls is a logical outgrowth of the notice regarding the rate structure for ISP calls. In support of their position, the commissioners cite *Transmission Access Policy Study Group v. Federal Energy Regulatory Commission,* 225 F.3d 667, 729 (D.C.Cir.2000), in which the court noted that "[w]ere the change between the proposed rule and final rule an important one, we would have to ask whether the final rule is a logical outgrowth of the proposed one." The court held that " '[a]n agency, after all, must be free to adopt a final rule not described exactly in the [notice of proposed rulemaking] where the difference is sufficiently minor, or agencies could not change a rule without beginning the rulemaking anew.' " *Id.* (quoting *National Cable Television v. Federal Communications Commission,* 747 F.2d 1503, 1507 (D.C.Cir. 1984)). In *National Cable,* the court held that there was sufficient notice in a case in which the FCC proposed a definition of the word "rural" as 1,500 residents in its proposed notice of rulemaking, but adopted a larger population of 2,500 residents as the final rule. *National Cable,* 747 F.2d at 1507. I am not persuaded that the

difference between ruling on the rate compensation as to *all* local calls when the notice stated that only local calls to ISPs would be investigated is "sufficiently minor" to escape the requirement of reasonable notice and comport with due process. Unlike *National Cable*, in this case, the commission's notice exceeded the scope, rather than the specifics, of the topic to be determined. Simply put, it is not reasonable to conclude that a rate structure determination as to *all* local calls grows logically from notice announcing that only a rate plan for ISPs calls would be investigated and determined.

The commissioners argue that at the hearing, a "staff witness" suggested that the commission could classify and price ISP traffic separately from other local traffic and that no one, including TDS, supported this approach. TDS's alleged stance does not establish that it had adequate notice of a bifurcated rate structure for *all* local calls (or even that it supported such a structure). In fact, TDS argues that its position is that Internet service provider traffic should be treated like other local traffic, namely, that it should be priced at a unitary rate.

Because the commission's notice indicated that it would investigate and determine compensation rates for calls to ISPs only, defendant commissioners violated TDS's federal due process rights by exceeding the scope of that notice and determining the rate structure for all local calls. Accordingly, I will vacate the portion of the commission's order that establishes a bifurcated rate structure for local traffic other than ISP traffic. Because I am vacating the bifurcated rate portion of the commission's order, it is unnecessary to discuss whether admitting "Exhibit 36" after the hearing had closed violates due process or whether the bifurcated rate structure conflicts with the FCC's order on remand.

## ORDER

IT IS ORDERED that the commission's *Order Establishing a Method for Pricing Reciprocal Compensation in Interconnection Agreements*, Docket 05–TI–283, at 3 (Nov. 8, 2000) is VACATED in part and REMANDED in part as follows:

(a) VACATED as to that portion of the commission's order that concludes that ISP-bound traffic is a type of local telecommunications traffic for purposes of 47 U.S.C. § 251(b)(5) and 47 C.F.R. § 51.701(a) and REMANDED so that the commission can conform its order, as of June 14, 2001, with the Federal Communications Commission's *Order on Remand: In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996; Intercarrier Compensation for ISP–Bound Traffic*, 2001 WL 455869, 16 F.C.C.R. 9151 (April 27, 2001); and

(b) VACATED as to that portion of the commission's order that established a bifurcated rate structure for local traffic other than ISP traffic.